UNITED STATES of America, Plaintiff,

v.

ETTRICK WOOD PRODUCTS, INC., Stephen K. McLeod, Kenneth J. McLeod, Larry W. Rieck, United Bank of Osseo, Robert J. Ofsdahl, Ronald O. Helstad, Defendants.

No. 87–C–595–C.

United States District Court, W.D. Wisconsin.

April 7, 1988.

John N. Joseph, Washington, D.C., David C. Sarnacki, Madison, Wis., for plaintiff.

John F. Jenswold, Madison, Wis., William A. Kirkpatrick, La Crosse, Wis., Gerald W. Laabs, Black River Falls, Wis., for defendants.

### ORDER

CRABB, Chief Judge.

Plaintiff United States of America filed this civil action seeking recovery of damages it sustained in connection with alleged false statements and misrepresentations in the application for, and receipt of, bank loans guaranteed by the Farmers Home Administration. The government asserts claims against defendants under the False Claims Act, 31 U.S.C. § 3729 et seq., and under common law for fraud, breach of contract, and unjust enrichment.

All defendants except Ettrick Wood Products, Inc. and Larry D. Rieck moved to dismiss the complaint, and defendant Helstad moved for summary judgment on the

claims against him. The motions were referred to the United States Magistrate who filed a Report and Recommendation on January 4, 1988, in which he recommended denial of all the motions, except those of Stephen McLeod and Kenneth McLeod which had become moot after plaintiff had dismissed its complaint against them.

In their motions and in their objections to the magistrate's Report and Recommendation, defendants Bank and Ofsdahl contend that the False Claims Act does not apply to applications for loan guarantees. Defendants Bank, Ofsdahl, and Helstad contend that the government's claims are barred by the statute of limitations. Defendant Helstad objects to the recommended denial of his motion for summary judgment on the issue of his lack of knowledge of the falsity of any information provided to the government. Finally, plaintiff objects to the magistrate's conclusion that the 1986 amendments to the False Claims Act should not be applied retroactively.

I agree with the magistrate's recommendations with respect to defendants' motions to dismiss and for summary judgment. I disagree, however, with his recommendation that the False Claims Act should not be applied retroactively.

■ The relevant facts are set out in detail in the Report and Recommendation. I will not repeat them here, since they are not critical to the issues before the court. I begin with the contention of defendants Bank and Ofsdahl that the False Claims Act does not apply to applications for loan guarantees.

In support of their position, defendants Bank and Ofsdahl cite *United States v. McNinch*, 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958), in which the Supreme Court held that the False Claims Act does not impose liability for a fraudulent application which does not subject the government to liability. *United States v. McNinch*, 356 U.S. at 599, 78 S.Ct. at 952 (citing *United States v. Tieger*, 234 F.2d 589, 591 (3d Cir.1956)) ("[t]he conception of a claim against the government normally connotes a demand for money or for some transfer of public property. In agreeing to

insure a home improvement loan the Farmers Home Administration disburses no funds nor does it otherwise suffer immediate financial detriment.") As the magistrate pointed out in his report, the facts in *McNinch* are very different from the facts in this case, in which the alleged fraudulent application is alleged to have resulted in significant financial detriment to the government. It is difficult to imagine what type of behavior would constitute a "claim" if a fraudulent application that results in governmental financial detriment did not constitute a violation of the Act. Defendants have presented no arguments that persuade me that their actions are not covered by the Act. I conclude that the False Claims Act applies to false applications for loan guarantees that result in the government's being called upon to disburse funds on those guarantees. Accordingly, the magistrate's recommendation to deny the motion to dismiss on this ground will be adopted as the court's own.

■ Defendants Bank, Ofsdahl, and Helstad raise a second contention that the claims under the False Claims Act are barred by the six-year statute of limitations contained in the Act. They argue that it is the filing of the false application with the Farmers Home Administration that triggers the running of the statute of limitations, and not either of the later dates on which the claim for payment was made or the government disbursed the funds.

As noted above, the Supreme Court held in *McNinch*, 356 U.S. 595, 78 S.Ct. 950, that the mere submission of a false application for a loan guarantee is not an actionable claim against the government under the Act. From this holding it follows that the statute of limitations does not begin to run on the date that a false application is filed, since the filing does not violate the Act. The statute begins to run when a demand has been made upon the government for performance on the insurance or guarantee. *United States v. Ekelman & Associates, Inc.*, 532 F.2d 545, 552 (6th Cir.1976); *United States v. Klein*, 230 F.Supp. 426, 441 (W.D.Pa.1964), *aff'd* 356 F.2d 983 (3rd Cir.1966). As the magistrate concluded, in

a thorough and accurate analysis of the issue, the statute did not begin to run until either the date on which demand for payment was made on the government, or the date on which funds were disbursed, both of which were within six years of the filing of this suit. The magistrate's recommendation to deny the motion to dismiss on the ground of statute of limitations will be adopted as the court's own.

■ I turn next to the most difficult of the issues raised by defendants: the retroactivity of the amendments made to the False Claims Act by the "False Claims Amendments Act of 1986." Pub.L. No. 99-562, § 2, 100 Stat. 3153 (codified as amended at 31 U.S.C. §§ 3729-33) (1986). If the amendments are applied retroactively to the acts of the defendants that took place in 1980, defendants face an increase in potential liability from a $2,000 civil penalty and twice the amount of damages sustained by the government, to not less than $5,000 nor more than $10,000 and treble damages. They contend that this increase in their potential liability and the new definition of "knowingly" added to the Act affect their substantive rights, and therefore must be presumed to have prospective application only.[1]

The magistrate agreed with defendants and recommended that the statute be applied as it read when defendants made out the false applications rather than as it reads today. Citing *Bennett v. New Jersey*, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed. 2d 572 (1985), he concluded that the 1986 amendments affected substantive rights of the defendants and therefore are presumed to have prospective application only, in the absence of a clear statement by Congress to the contrary.

Although it is a close question, I conclude that the changes are not substantive and that retroactive application is proper.

■ I begin by noting that the enhanced amounts in the damages and forfeitures provisions of the False Claims Act do not render this statute "penal," and thereby implicate the *ex post facto* prohibition of the United States Constitution. The Supreme Court has held that the *ex post facto* prohibition relates exclusively to statutes in punishment of crime. *Galvan v. Press*, 347 U.S. 522, 531 & n. 4, 74 S.Ct. 737, 742 & n. 4, 98 L.Ed. 911 (1954); *Bankers Trust Co. v. Blodgett*, 260 U.S. 647, 652, 43 S.Ct. 233, 235, 67 L.Ed. 439 (1923) (*ex post facto* clause not applicable to retroactive tax penalty); *Calder v. Bull*, 3 Dall. 386, 1 L.Ed. 648 (1798) (statute granting new trial in a particular case does not violate *ex post facto* clause).

Although the False Claims Act provides for treble damages and forfeitures against persons found liable under the Act, the statute is civil and remedial in nature. *U.S. ex rel. Marcus v. Hess*, 317 U.S. 537, 549-51, 63 S.Ct. 379, 386-87, 87 L.Ed. 443 (1943). The Supreme Court stated that the remedy of the False Claims Act "affords the government complete indemnity for the injuries done it," which at the time was a lump sum forfeiture of $2,000, together with double damages, adding that the "remedy does not lose the quality of a civil action because more than the precise amount of so-called actual damage is recovered." The Court was satisfied that if Congress imposed triple damages or punitive damages, the statute would retain its

---

1. The former version of 31 U.S.C. § 3729 provides that a "person ... is liable to the United States Government ... if the person (1) knowingly presents, or causes to be presented ... a false or fraudulent claim for payment or approval."

31 U.S.C. § 3729 as amended and codified at 31 U.S.C. § 3729(a)(1), provides for liability of "[a]ny person who (1) knowingly presents, or causes to be presented ... a false or fraudulent claim for payment or approval."

The 1986 amendments add the following definition of "knowing" and "knowingly":

For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information—

　(1) has actual knowledge of the information;

　(2) acts in deliberate ignorance of the truth or falsity of the information; or

　(3) acts in reckless disregard of the truth or falsity of the information,

　and no proof of specific intent to defraud is required.

31 U.S.C. § 3729(b). The former version contained no definition of knowingly.

civil nature. *Id.* I conclude from *Hess* that the 1986 increase in the amounts recoverable does not change the civil nature of the Act.

The government bases its argument for retroactive application of the Act upon the presumption of retroactivity set out in *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974): that a federal court must "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley,* 416 U.S. at 711, 94 S.Ct. at 2016.

This presumption of retroactivity is not inconsistent with the presumption of prospectivity set forth in *Bennett,* upon which the magistrate relied. Whereas the holding in *Bradley* presumes retroactivity unless the change in law affects substantive rights of defendants, the holding in *Bennett* presumes prospective application if the change in law affects the substantive rights of defendants. Under either holding, the point is the same: substantial personal rights are secured from retroactive deprivation; remedies and modes of procedure not affecting matters of substance are not. I employ the *Bradley* analysis simply because it provides helpful guidelines.

In determining whether application of the new law is just, the Supreme Court directed the lower courts to consider "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Bradley,* 416 U.S. at 717, 94 S.Ct. at 2019. No one factor is dispositive. *See City of Great Falls v. United States Department of Labor,* 673 F.2d 1065, 1068 (9th Cir.1982) (per curiam).

Under the *Bradley* presumption it is not necessary to find affirmative support in a statute or its legislative history for application of new law to pending cases. *Bradley,* 416 U.S. at 712–716, 94 S.Ct. at 2016–2019. Even where, as in this case, neither the statutory language or the legislative history indicates that the statute should be applied retroactively, the amended statute is given effect unless "manifest injustice" will occur.[2]

The first factor identified in *Bradley,* the nature of the parties, arises from the distinction between private disputes and litigation "involving great national concerns" and parties who are public entities. *Bradley,* 416 U.S. at 718–719, 94 S.Ct. at 2019–2020. The origin and justification are found in Chief Justice Marshall's analysis in *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801):

> in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns ... the court must decide according to existing laws....

The government contends that retroactive application of the 1986 amendments will further a matter of great national concern. The increased penalties in the 1986 amendments to the False Claims Act indicate that Congress sought both to deter the increasingly pervasive and severe problem of fraud and to enhance the government's ability to recover losses sustained as a result of fraud against the government. 31 U.S.C. § 3729(a); S.Rep. No. 99–345, 99th Cong., 2d Sess. 3, *reprinted in* 1986 U.S. Code Cong. & Ad.News 5266, 5267–69; *see also* 132 Cong.Rec. H6480 (daily ed. Sept. 9, 1986) (statement of Rep. Fish); *id.* at H6479 (statement of Rep. Glickman) (inflation, increased costs of investigation, and the current value of the dollar support increased damages).

---

**2.** The government contends that the legislative history indicates that the 1986 amendments should apply retroactively, even though Congress did not provide explicitly for the retroactive application of the 1986 amendments. The government presents the remarks of Representative Berman, one of the bill's authors, who stated, after the bill's passage, that in light of *Bradley,* he concluded at the time of the bill's consideration that "it was unnecessary to be explicit about retroactivity, as the courts would infer it from our silence." 133 Cong.Rec. H9515 (daily ed. November 3, 1987). The remarks of one member of Congress delivered after passage of an act are wholly unpersuasive in conclusively determining legislative intent.

Although I am doubtful whether general deterrence may be furthered by retroactive relief, I agree with the government that retroactive application of the False Claims Act will further the purpose of recovering substantial losses of public funds sustained as a result of fraud against the government.[3]

The second *Bradley* factor, the nature of the rights, is intended to protect rights that have "matured or become unconditional." *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020. This factor comports with the rule of statutory construction that statutes impairing substantive rights that have matured are presumed to have prospective effect only. *See, e.g., Bennett v. New Jersey,* 470 U.S. at 639, 105 S.Ct. at 1560 (government's right to recover improperly used funds had "matured"); *United States v. Kairys,* 782 F.2d 1374, 1381 (7th Cir.), *cert. denied,* 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986); *see also Greene v. United States,* 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964) (new act deprived government employees of right to restitution for wrongful discharge which had "matured" under 1955 regulation); *Winfree v. Northern Pacific Railway Company,* 227 U.S. 296, 301–02, 33 S.Ct. 273, 273–74, 57 L.Ed. 518 (1912) (new act abrogates existing defense); *United States v. Fernandez–Toledo,* 749 F.2d 703 (11th Cir.1985) (vested right to bail cannot be disturbed by new Bail Reform Act).

Defendants have no vested right to double damages as opposed to triple damages, or to a $2,000 forfeiture, rather than a $5,000 to $10,000 forfeiture. There is no vested right in remedies. *See, e.g., Gulf Offshore Company v. Mobil Oil Corp.,* 453 U.S. 473, 486 n. 16, 101 S.Ct. 2870, 2879 n. 16, 69 L.Ed.2d 784 (1981) (change in the law requiring proper instruction to jury on damages does not constitute a "manifest injustice" exception to the *Bradley* retroactive presumption); *Winfree v. Northern*

*Pacific Railway Company,* 227 U.S. at 301–02, 33 S.Ct. at 273–74 (if act only gives a more efficient or more complete remedy, it is to be applied retroactively); *O'Hare v. General Marine Transportation Corporation,* 740 F.2d 160 (2d Cir.1984) (retroactively applied remedial scheme required, rather than simply allowed for, imposition of attorney's fees and an award of double interest payments to compensate ERISA fund for costs incurred in connection with delinquencies); *Meller v. Heil,* 745 F.2d 1297, 1304–1305 *cert. denied,* 467 U.S. 1206, 104 S.Ct. 2390, 81 L.Ed.2d 347 (1984) (new amendments increased allowable damages).

The third *Bradley* factor, the nature of the impact of the new law on existing rights, "stems from the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2021. This is the essence of the holding in *Bennett:* that statutes affecting substantive rights and liabilities are presumed to have prospective effect only. *See, e.g., Bennett v. New Jersey,* 470 U.S. at 639, 105 S.Ct. at 1559; *United States v. Kairys,* 782 F.2d at 1381. If the increase in the amounts in the damages and forfeiture provisions or the new definition of knowingly impose "new and unanticipated obligations" upon defendants, their liability should be limited to what it was under the prior version of the Act. In my opinion the changes do not have that effect upon defendants.

The increase in the amounts recoverable under the Act does not impose an additional duty on defendants. It merely changes the measure of damages that result from a violation of the Act. As I noted earlier in connection with the *ex post facto* clause, the False Claims Act is a remedial statute; it imposes a civil sanction. *See United States v. Kairys,* 782 F.2d at 1381 ("In order for a statute to be considered remedi-

---

**3.** Because I find *infra* that the new definition of "knowingly" does not effect a substantive change in the law, I need not consider whether the retroactive application of the new definition will further a remedial purpose. *But see United States v. Hill,* 676 F.Supp. 1158, 1168 (N.D.Fla.

1987) ("Congress' purpose of providing a more 'uniform' or 'appropriate' standard [of "knowingly"] for civil, remedial actions will be furthered by applying the amendments ... retroactively.")

al it must be one that neither enlarges nor impairs substantive rights but relates to the means and procedures for enforcement of those rights."); *see also United States ex rel. Marcus v. Hess*, 317 U.S. at 549–51, 63 S.Ct. at 386–87; *United States v. Hughes*, 585 F.2d 284, 287 (7th Cir.1978).

The statute's explanation of the requisite mental state does not change the underlying requirements for liability so as to affect the defendants' substantive rights. Neither the definition of "knowing" or "knowingly" as meaning that a person must have "actual knowledge of the information" or act in "deliberate ignorance" or "reckless disregard of the truth of falsity of the information," nor the explicit elimination of specific intent to defraud as an element, imposes new obligations on defendants. 31 U.S.C. § 3729(b).

Under the earlier version of the False Claims Act which provided for liability when one "knowingly presents or causes to be presented ... a false or fraudulent claim for payment or approval," [31 U.S.C. § 3729(1), amended and codified at 31 U.S. C. § 3729(a)(1) ], some courts had interpreted the statute as requiring "specific intent" to deceive the government, *United States v. Davis*, 809 F.2d 1509, 1512 (11th Cir. 1987); *United States v. Aerodex, Inc.*, 469 F. 1003, 1006–1007 (5th Cir.1972); *United States v. Mead*, 426 F.2d 118 (9th Cir.1970). Other courts had interpreted it as requiring merely "knowingly filing a false or fraudulent statement." *United States v. Hughes,* 585 F.2d at 287; *United States v. Cooperative Grain & Supply Co.*, 476 F.2d 47 (8th Cir.1973).

However, the Court of Appeals for the Seventh Circuit has never required the government to prove that defendants had the specific intent to defraud the government under the False Claims Act, *United States v. Hughes*, 585 F.2d at 287, and many of the courts that have required proof of "specific intent" have actually required proof of "specific intent" *or* "knowledge." *See, e.g., United States v. Aerodex, Inc.*, 469 F.2d at 1007 ("The law is settled in [the Fifth] Circuit that to show a violation of the False Claims Act the evidence must demonstrate 'guilty knowledge of a purpose on the part of [the defendant] to cheat the Government,' *or* 'knowledge *or* guilty intent.' " (Citation omitted; emphasis added). Neither these defendants nor any other defendants can argue plausibly that they would have altered their conduct to avoid liability had they known of the language of the amendment.[4]

Although the magistrate was of the opinion that the Act expanded the potential liability of defendants by defining knowingly to include deliberate ignorance or careless disregard for the truth, I do not agree.[5]

Even in the criminal context, the requirement of knowledge includes deliberate ignorance and reckless disregard for the truth.[6] No more in the civil context can

---

**4.** In *Bradley,* the Supreme Court considered whether retroactive application would effect a change in "substantive obligations of the parties;" that is, whether the defendant would have altered its conduct had it known of the new law. The government contends that *Bradley* requires analysis of the impact of the new change in the immediate case only; in other words, it requires determining whether these defendants would have acted differently had they known of the increased penalties or the new definition of "knowingly." While in *Bradley* the Court may have considered only the case before it, I do not think it intended the analysis should focus on the proclivities of the particular defendants in any given case. This would lead to different applications of the same statute. Accordingly, I will consider retroactive application in both the individual case and in a general sense. *But see United States v. Hill,* 676 F.Supp. at 1170 ("without a plausible suggestion of likely significant

and justified reliance on the prior law, a party cannot avail itself of the third *Bradley* factor").

**5.** The legislative history indicates that Congress was concerned that the requirement of "specific intent" by some courts would foreclose liability against the individual who engages in "wilful blindness" or "ostrich-type" behavior. 1986 U.S. Code, Cong. & Ad.News at 5272. In order to hold responsible those corporate officers who insulate themselves from knowledge of false claims submitted by lower-level subordinates, Congress added the "deliberate ignorance" and "reckless disregard" definitions.

**6.** Under the Model Penal Code, "knowledge" is established if a person is *aware* of a high probability of a fact's existence, unless he actually believes it does not exist. Model Penal Code § 2.02(7). *See also United States v. Ramsey*, 785 F.2d 184, 188–191 (7th Cir.1986).

one avoid knowledge of the truth by closing one's eyes, or by acting with reckless disregard for the facts.

In sum, I conclude that neither the increased amounts of damages or forfeitures, nor the "new" definition of knowingly, changes the underlying requirements for liability, or affects the substantive liability of the defendants.

Upon evaluation of each *Bradley* factor I find no support for a "manifest injustice" exception to the presumption of retroactive application of the amendments to the present case. I do not adopt the magistrate's recommendation that the 1986 amendments to the False Claims Act not be applied to the present action.

*Defendant Helstad's Motion for Summary Judgment*

I agree with the magistrate's evaluation that disputes over critical facts preclude a finding for defendant Helstad on his motion for summary judgment.

## ORDER

IT IS ORDERED that the Report and Recommendation of the United States Magistrate is ADOPTED as the court's own; the motions to dismiss of defendants Bank and Ofsdahl are DENIED on their claim that the False Claims Act does not apply to applications for loan guarantees; the motions to dismiss of defendants Bank, Ofsdahl and Helstad are DENIED on their claim that the government's claims are barred by the statute of limitations; defendant Helstad's motion for summary judgment is DENIED. I do NOT ADOPT the magistrate's conclusion that the 1986 amendments to the False Claims Act should not be applied to the present action.