724 F.Supp. 448 (1988)
Betty KELSOE, Jeffrey Kelsoe and Ralph Kelsoe, Plaintiffs,
v.
FEDERAL CROP INSURANCE CORP., United States Department of Agriculture, Defendants.
Civ. A. No. P-83-32-CA.
United States District Court, E.D. Texas, Paris Division.
October 11, 1988.
*449 Jim D. Lovett, Jesse L. Nickerson III, Paris, Tex., for plaintiffs.
Elizabeth R. Moore, Nicki L. Koutsis, U.S. Dept. of Justice, Washington, D.C., Bob Wortham, U.S. Atty., Tyler, Tex., for defendants.

MEMORANDUM OPINION AND ORDER
PAUL N. BROWN, District Judge.
After a trial to the jury, Ralph Kelsoe, Betty Kelsoe, and Jeffrey Kelsoe were found to have violated the False Claims Act, 31 U.S.C. §§ 3729-3733 (West 1988) ("FCA"), by submitting fraudulent claims to the Federal Crop Insurance Corporation ("FCIC").[1] The jury assessed damages against Betty Kelsoe in the amount of $2,049.00 and against Jeffrey Kelsoe in the amount of $21,200.00.
While this case was pending, Congress amended the FCA in several respects. Pub.L. No. 99-562, 100 Stat. 3153 (1986). Primarily relevant here are the amendments to the damages and penalties provisions of the FCA. Under the original version of the FCA, the government was entitled to an award of double damages and a civil penalty of $2,000.00 for each violation of the FCA. As amended, the FCA now provides for treble damages plus a penalty of not less than $5,000.00 nor more than $10,000.00 for each violation. 31 U.S.C. § 3729(a) (1987).
The FCIC has moved that the Court apply the amended version of the FCA and award it treble damages and increased penalties. Not surprisingly, the Kelsoes argue that the original version of the FCA should be applied. Whether to apply the amended version of the FCA to cases pending at the time the amendments became law is a question that no appellate court has answered and one that has divided the few district courts that have confronted the issue. The parties have submitted post-trial briefs on the issue, and after due consideration, the Court concludes that the amended FCA should apply to this case and the Kelsoes will be subject to treble damages and a penalty of $7,000.00 for each violation of the FCA.
The rule of decision to be applied in this case was announced in Bradley v. School Board of the City of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). There the Supreme Court reaffirmed the long-standing principle of statutory construction which holds that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley, 416 U.S. at 711, 94 S.Ct. at 2016. The rule in Bradley "comports with another venerable rule of statutory interpretation, i.e., that statutes affecting substantive rights and liabilities are presumed to have only prospective effect." Bennett v. New Jersey, 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985). Bennett is an application of the Bradley rule. See, U.S. v. Hill, 676 F.Supp. 1158, 1170 (N.D.Fla.1987). Bradley presumes retroactive application of a law unless the change in the law affects a party's substantive rights; Bennett presumes prospective application if the change in law affects such substantive rights. U.S. v. Ettrick Wood Products, Inc., 683 F.Supp. 1262, 1265 (W.D.Wisc.1988). These rules are but two sides of the same coin. Accordingly, this Court must apply the 1986 amendments to this case, "unless doing so would result in manifest injustice [i.e. affect the defendants' substantive rights] or there is statutory direction or legislative history to *450 the contrary." Bradley, 416 U.S. at 711, 94 S.Ct. at 2016.

Absence of Statutory Direction
As several of the district courts that have faced the issue have also noted, Congress failed to provide the courts with any direction on whether to apply the 1986 amendments to cases pending at the time the amendments were enacted.[2] The amendments themselves contain no helpful language, and the parties in this case have presented the Court with no other sufficient indicia of Congressional intent on this issue.
In its post-trial briefs, the FCIC makes two arguments in support of its contention that Congress intended the amendments to apply to pending cases. First, the FCIC argues that since Congress did not expressly restrict the amendments to prospective application only, Congress must have intended the amendments to apply to pending cases. However, this Court does not draw any conclusion from Congress' silence on the issue. Second, the FCIC cites remarks by Representative Berman, made after the passage of the amendments, that support the FCIC's position that Congress intended the amendments to apply to pending cases. This Court, as well as other courts, has found this argument to be unpersuasive.[3]
Similarly, the letter from the Director of the Congressional Budget Office, cited by the Kelsoes in post-trial briefs, in which the Director states that "the provisions of the [amendments] will apply only to claims made subsequent to enactment," is also wholly unpersuasive on the issue of Congressional intent. The purpose of such a letter is to inform Congress of the potential budgetary ramifications of the passage of legislation. Clearly, the Director's remarks cannot be considered evidence of what Congress intended in passing the amendments.
The Kelsoes also argue that the amendments should apply retroactively only if Congress had specifically provided for such retroactive application. This argument must also be rejected. After reviewing several of its previous decisions, the Court in Bradley stated
even where the intervening law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect ... we must reject the contention that a change in law is to be given effect in a pending case only where that is the clear and stated intention of the legislature.
Bradley, 416 U.S. at 715, 94 S.Ct. at 2018.
Therefore, the Court finds that the FCA, as amended, contains no statutory direction, or legislative history, which indicates that the amendments should not apply to this case.

The Bradley Analysis
Having found no statutory direction or legislative history to the contrary, this Court must now determine whether the application of the amended FCA to this case would result in "manifest injustice" by affecting the Kelsoes' substantive rights. Bradley sets forth a three-part test to be applied in determining whether the application of a new law to pending cases will result in manifest injustice. This Court must examine (a) the nature and identity of the parties, (b) the nature of the parties' rights and (c) the impact of the change in the law upon those rights. Bradley, 416 U.S. at 717, 94 S.Ct. at 2019.

Nature of the Parties
Under this part of the analysis, the principal consideration is whether this dispute *451 is a "mere private case[s] between individuals", or one involving "great national concerns." Bradley, 416 U.S. at 711-712, 94 S.Ct. at 2016, citing, United States v. The Schooner Peggy, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801). The important distinction is that in such "private" cases, "a court will and ought to struggle hard against a construction which will, by retrospective operation, affect the rights of parties." Bradley, 416 U.S. at 712, 94 S.Ct. at 2016, citing, Schooner Peggy. Clearly, this lawsuit is not merely a private case between individuals. This case involves fraud against the United States and the government's attempt to recover damages caused by the Kelsoes' fraudulent acts. "The 1986 amendments to the False Claims Act evince a clear effort by Congress to address a paramount national concern." U.S. v. Hill, 676 F.Supp. at 1169. "The increased penalties in the 1986 amendments to the False Claims Act indicate that Congress sought both to deter the increasingly pervasive and severe problem of fraud and to enhance the government's ability to recover losses sustained as a result of fraud against the government." U.S. v. Ettrick Wood Products, Inc., 683 F.Supp. at 1265. The right of the United States to recover public funds paid on fraudulent claims is indeed of great national concern. Accordingly, the first Bradley factor weighs heavily in favor of applying the 1986 amendments to this case.

Nature of the Parties' Rights
The second part of the Bradley analysis focuses on whether the application of the amendments to pending cases would affect a party's substantive rights, rights "that had matured or become unconditional." Bradley, 416 U.S. at 720, 94 S.Ct. at 2020. "This factor comports with the rule of statutory construction that statutes impairing substantive rights that have matured are presumed to have prospective effect only." U.S. v. Ettrick Wood Products, Inc., 683 F.Supp. at 1266. This is the essence of the rule in Bennett. If the Kelsoes' position is that they have a substantive, or matured and unconditional right to pay double damages, as opposed to treble damages, and a $2,000.00 forfeiture, as opposed to a $5,000.00 to $10,000.00 forfeiture, their position cannot be sustained.[4]
The Kelsoes cite the case of U.S. v. Bekhrad, 672 F.Supp. 1529 (S.D.Iowa 1987), for the proposition that the amended damages and penalties provision of the FCA cannot be applied to pending cases. In that case, the court held that the application of the amended provision "would create a new liability in connection with a past transaction." Id. at 1530. However, the court in Bekhrad failed to apply or even mention the Bradley analysis in reaching its decision. Furthermore, the "new liability" imposed upon the Kelsoes relates only to the amount of damages and penalties they must pay. The jury found that the Kelsoes committed a fraud upon the United States, and the Kelsoes were subject to pay damages and penalties for their fraud under both the original and amended versions of the FCA. The amendments to the FCA changed the remedies available to the government, but in no way affected the Kelsoes' liability for their conduct.[5]
*452 The Court finds that the second Bradley factor also weighs in favor of applying the amended FCA to this case.

Impact of the Amendments on Existing Rights
The final factor to be analyzed under Bradley concerns "the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." Bradley, 416 U.S. at 720, 94 S.Ct. at 2021. "If the new statutory obligations would have caused the defendant to alter its conduct had it known of its obligations, a court is more likely to find manifest injustice in applying the new law retroactively." U.S. v. Hill, 676 F.Supp. at 1170. As noted above, the increase in the amount of damages and penalties the government may recover under the FCA does not impose a "new liability" upon the Kelsoes. The amended FCA "merely changes the measure of damages that result from the violation of the Act." U.S. v. Ettrick Wood Products Co., Inc., 683 F.Supp. at 1266. The Kelsoes do not argue, and there is simply no reason to believe, that if they had known their conduct subjected them to treble damages and a $5,000.00 to $10,000.00 forfeiture, instead of double damages and a lesser forfeiture, the Kelsoes would have altered their conduct to avoid such liability. Applying the amended FCA to this case does not "infringe upon or deprive" the Kelsoes of any rights that had "matured or become unconditional." Bradley, 416 U.S. at 720, 94 S.Ct. at 2020. Consequently, the Court finds that the third Bradley factor also weighs in favor of applying the 1986 amendments to this case.
After considering the nature and identity of parties involved, the nature of the rights of such parties, and the impact on those rights of applying the 1986 amendments of the FCA to this case, the Court concludes that the award of treble damages and increased penalties will not result in a "manifest injustice".

Kelsoes' Other Arguments
In arguing that this Court should apply the original version of the FCA, the Kelsoes have cited the case of Griffon v. United States Department of Health, 802 F.2d 146 (5th Cir.1986). In that case, the Court of Appeals held that the Civil Monetary Penalties Law ("CMPL"), 42 U.S.C. § 1320a (1983), could not be applied to false claims submitted before the enactment of the CMPL. Griffon, 802 F.2d at 155.[6] However, the Kelsoes fail to note that Griffon is different from this case in a number of important respects. First, the basis of the defendant's challenge in Griffon was that the CMPL could not be applied retroactively to create liability for conduct that occurred before the enactment of the CMPL. In this case, the Kelsoes' conduct subjected them to liability under both the original and amended versions of the FCA. Second, the CMPL subjected a defendant to liability for conduct under a lesser standard than that required under the FCA. The requirement under the CMPL was whether the defendant knew or had reason to know of the falsity of claims submitted. Griffon, 802 F.2d at 154. The Griffon court correctly decided that "retroactive application of the liability provisions of the CMPL to a [defendant] who lacked actual knowledge of the fraudulent nature of his claims could affect vested rights and result in manifest injustice ...", because persons given notice of the "knew or had reason to know" standard of liability would "take greater care to avoid `reason to know' liability." Id. The Kelsoes' conduct constituted fraud under either version of the FCA and there is no reason to believe the Kelsoes would have altered their conduct had they known that the amended FCA would apply in any case brought against them. Griffon simply does not support the Kelsoes' position in this case.

*453 The "Penal" Nature of the FCA

The Kelsoes also argue that this Court should narrowly construe the FCA and not apply it retroactively, because the FCA is "drastically penal" in nature. As authority for this proposition, the Kelsoes cite the case of United States ex rel. Brensilber v. Bausch & Lomb Optical Co., 131 F.2d 545 (2nd Cir.1942), aff'd by an equally divided court, 320 U.S. 711, 64 S.Ct. 187, 88 L.Ed. 417 (1943). There, the Court of Appeals indeed stated that the FCA is "not only penal, but drastically penal ... for this reason it has been strictly construed." Id. at 547.[7]
However, shortly after Brensilber was decided, the Supreme Court reversed the Hess case, and thoroughly reviewed the FCA's civil damages and penalties provision, while making no mention of the Act's "drastically penal nature." United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). "We think the chief purpose of the statutes here was to provide for restitution to the government of money taken from it by fraud, and the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole." Id. at 551-52, 63 S.Ct. at 388. In rejecting a challenge to an award of penalties and damages under the FCA as a "criminal" penalty, the Court stated, "we cannot say that the remedy now before us requiring payment of a lump sum and double damages will do more than afford the government complete indemnity for the injuries done to it." United States ex rel. Marcus, 317 U.S. at 549, 63 S.Ct. at 387. "Congress might have provided here as it did in the anti-trust laws for recovery of `three-fold' the damages sustained" .... Id. at 550, 63 S.Ct. at 387. This is precisely what Congress has now done.

Ralph Kelsoe's Liability for Damages
This Court must address one final issue concerning Ralph Kelsoe's liability for the damages to be awarded to the FCIC. In this case, the jury assessed damages of $2,019.00 against Betty Kelsoe for submitting two false claims to the FCIC. The jury also assessed damages of $21,200.00 against Jeffrey Kelsoe for submitting six other false claims. The jury assessed no damages against Ralph Kelsoe. However, the jury did find that Ralph Kelsoe had conspired with Betty Kelsoe to submit two false claims and with Jeffrey Kelsoe to submit six other false claims. Notwithstanding the jury's failure to assess damages against Ralph Kelsoe individually, as a co-conspirator, Ralph Kelsoe is legally responsible for the damages caused by each of the two conspiracies in which he participated. "Once the liability for a conspiracy under the [FCA] is established, each conspirator is liable for each of the overt acts committed pursuant to the conspiracy irrespective of the fact that he did not personally commit the act." U.S. v. Cripps, 460 F.Supp. 969, 975 (E.D.Mich. 1978). Therefore, this Court holds that Ralph Kelsoe is jointly and severally liable for the damages assessed against Betty Kelsoe, and for those assessed against Jeffrey Kelsoe.

Civil Penalties
Having found that the amended FCA should apply to this case, there remains for consideration the amount of civil penalties to be imposed upon each of the counterdefendants. The FCA permits recovery of multiple penalties, where a defendant has submitted several fraudulent claims. U.S. v. Bornstein, 423 U.S. 303, 309, 96 S.Ct. 523, 528, 46 L.Ed.2d 514 (1976). In determining the number of false claims submitted, and hence the number of penalties to be imposed, "a correct application of the statutory language requires [rather] that the focus in each case be upon the specific conduct of the person from whom the government seeks to collect the statutory forfeiture." Bornstein, 423 U.S. at 313, 96 S.Ct. at 529. Furthermore, a defendant may be assessed a penalty not only for each false claim submitted, but also for each conspiracy to submit a false *454 claim. U.S. v. CFW Construction Co., Inc., 649 F.Supp. 616, 618 (D.S.C.1986); U.S. v. Uzzell, 648 F.Supp. 1362, 1368 (D.D. C.1986). Each defendant is also jointly and severally liable under the FCA for statutory civil penalties. U.S. v. CFW Construction, 649 F.Supp. at 618. Lastly, "a showing of measurable damage to the United States is not an essential element to a cause of action for submission of a false claim or for conspiracy to submit false claims under the Act." Id.
In this case, the jury found that Betty Kelsoe and Ralph Kelsoe had conspired to submit two false claims to the FCIC. The jury also found that Ralph Kelsoe and Jeffrey Kelsoe had conspired to submit six other false claims to the FCIC. Therefore, Betty Kelsoe and Ralph Kelsoe will be ordered to forfeit and pay a civil penalty of $21,000.00, for which they are jointly and severally liable, representing a $7,000.00 penalty for each of the two false claims submitted, and a further $7,000.00 penalty for the conspiracy to submit the false claims. Jeffrey Kelsoe and Ralph Kelsoe will be ordered to forfeit and pay a civil penalty of $49,000.00, representing a $7,000.00 penalty for each of the six false claims submitted, and a further $7,000.00 penalty for the conspiracy to submit the false claims.

Conclusion
Accordingly, the FCIC's motion to have the Court apply the amended damages and penalties provision of the FCA is GRANTED. The Court holds that Betty Kelsoe and Ralph Kelsoe are jointly and severally liable for (1) $6,147.00, three times the amount of damages suffered by the United States as a result of the two false claims submitted, and (2) $21,000.00 as a civil penalty; Jeffrey Kelsoe and Ralph are jointly and severally liable for (1) $63,600.00, three times the amount of damages suffered by the United States as a result of the other six false claims submitted, and (2) $49,000.00 as a civil penalty. Judgment will be entered accordingly.
NOTES
[1] The FCIC is an arm of the United States Department of Agriculture.
[2] United States ex rel. Lavalley v. First National Bank of Boston, 707 F.Supp. 1351 (D.Mass.1988) ("nothing in the legislative history suggests that Congress even considered the applicability of the new amendment to pending cases."); U.S. v. Hill, 676 F.Supp. at 1166-67 ("the language of the statute does not rebut the Bradley presumption of immediate implication ... Congress never expressly considered whether the 1986 amendment should apply prospectively or retroactively.").
[3] United States ex rel. Lavalley, 707 F.Supp. at 1360 (noting Rep. Berman's statements as not persuasive); United States v. Ettrick Wood Products, Inc., 683 F.Supp. at 1265 nt. 2 ("the remarks of one member of Congress delivered after passage of an act are wholly unpersuasive in conclusively determining legislative intent.").
[4] United States v. Oakwood Downriver Medical Center, 687 F.Supp. 302, 307 (E.D.Mich.1988) ("The court does not find that defendants had a `matured' right to the imposition of double as opposed to treble damages against them ..."); U.S. v. Ettrick Wood Products Company, Inc., 683 F.Supp. at 1266 ("Defendants have no vested right to double damages as opposed to treble damages or to a $2,000.00 forfeiture, rather than a $5,000.00 to $10,000.00 forfeiture."); U.S. v. Hill, 676 F.Supp. at 1169 ("It cannot be said that the defendants have a `matured' or `unconditional' right to double, rather than treble, damages, or to a $2,000.00 forfeiture, rather than a forfeiture ranging from $5,000.00 to $10,000.00.")
[5] In another context, the same rule has been applied. In 1980, Congress amended 29 U.S.C. § 1132(g), changing the remedies available in an ERISA suit for delinquent contributions, and these amendments were applied to cases pending at the time the amendments became law. O'Hare v. General Marine Transport Corp., 740 F.2d 160, 170-71 (2d Cir.1984). After citing Bradley, the O'Hare court stated

A default in fund contributions would have subjected [the employer] to liability before the 1980 amendments ... The 1980 amendments in this regard did not penalize conduct which was previously not subject to federal liability, they merely changed the remedial scheme somewhat by requiring the award of interest and attorney's fees where previously those remedies were assessed at the discretion of the trial judge. O'Hare, 740 F.2d at 171.
[6] The Griffon Court noted that the CMPL was similar to the FCA in many respects. However, the Court stated that the CMPL "was intended to be a civil alternative to existing criminal sanctions", whereas the FCA is a "civil liability statute." Griffon, 802 F.2d at 150.
[7] The Brensilber court based its decision on U.S. ex rel. Marcus v. Hess, 127 F.2d 233 (3rd Cir. 1942). However, the courts in Brensilber and Hess seemed most concerned by the qui tam provisions of the FCA, which provisions have no relevance to this case.