**UNITED STATES of America, Plaintiff,**

v.

**Edgar M. STELLA PÉREZ
and Guillermo Alemañy
Rivera, Defendants.**

Civ. No. 85–2197 (RLA).

United States District Court,
D. Puerto Rico.

Dec. 9, 1993.

José M. Pizarro Zayas, U.S. Attorney's Office, Hato Rey, PR, Marlene F. Gibbons, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, DC, for plaintiff.

Pedro Varela, Harry Anduze Montaño, Hato Rey, PR, for defendants.

## OPINION AND ORDER

ACOSTA, District Judge.

This action was instituted by the United States of America seeking damages and forfeiture penalties against Edgar M. Stella Pérez and Guillermo Alemañy Rivera under the provisions of the False Claims Act, 31 U.S.C. §§ 3729–3733 ("FCA").

Plaintiff moved for summary judgment pursuant to Fed.R.Civ.P. 56 (docket Nos. 16, 17, 40, 49, and 61). The defendants opposed and requested the dismissal of the complaint, alleging, *inter alios,* that the government's action is time-barred under the provisions of the FCA (docket Nos. 35, 38, and 73). These motions were referred to the U.S. Magistrate Judge who issued his Report and Recommendation (docket No. 80). Both defendants opposed and plaintiff responded to defendants' objections (*see* docket Nos. 82, 84, 87, 88, 94, and 95).

### I. MOTION TO DISMISS

#### A. STATUTE OF LIMITATIONS

The defendants contend that the government's claim is time-barred under the 6–year statute of limitations contained in the FCA, which reads, in its pertinent part, as follows:

(b) A civil action under section 3730 may not be brought—

(1) more than 6 years after the date on which the violation of section 3729 is committed....

31 U.S.C. § 3731(b)(1). We disagree with defendants' position.

#### B. FACTS AND APPLICABLE LAW

On July 7, 1982 both defendants were charged in a nine-count indictment with vio-

lations of 18 U.S.C. §§ 2, 152, 371, and 1001. While affirming defendants' convictions, the Court of Appeals for the First Circuit summarized the facts of this case in accordance with the criminal charges as follows:

> Count one charged Stella, the President, Chairman of the Board of Directors, and former Medical Director of the Hospital Nuestra Señora de la Guadalupe in Hato Rey, Puerto Rico (the "Hospital"), and Alemañy, the former controller of the Hospital, with conspiracy to defraud the Departments of Housing and Urban Development ("HUD") and Health and Human Services ("HHS") in connection with a federally insured $12.46 million mortgage loan obtained by the Hospital for remodeling and expansion. Count one alleged that Stella and an unindicted co-conspirator named José A. Cardona–Alvarez, the Hospital's former assistant administrator, controlled a furniture company known as Casa Cardona, Inc., and its subsidiary, an equipment company by the name of AAA Hospital Supply, Inc. Stella and Cardona allegedly used these two corporations, with Alemañy's assistance, to siphon off the Hospital's mortgage funds by selling equipment and furnishings to the Hospital at inflated prices, and by charging the Hospital for equipment that the corporations never furnished.
>
> Counts two through four of the indictment charged Stella and Alemañy with submitting and causing to be submitted false documents to HUD to procure mortgage funds. Counts five through seven charged the defendants with submitting and causing to be submitted false Medicare cost reports for the years 1977, 1978, and 1979. Counts eight and nine charged Stella and Alemañy with making, aiding, and abetting false oaths in bankruptcy in connection with personal bankruptcy petitions filed by Stella and his wife in 1979.
>
> After a 30–day jury trial, Stella was found guilty on all counts, sentenced to a 20–year term of imprisonment, and placed on probation for another five years on condition that he make restitution of $686,349.[1] Alemañy was found guilty on counts one, five, and six of the indictment, sentenced to ten years in prison, and fined $10,000....

*United States v. Alemañy Rivera,* 781 F.2d 229, 231 (1st Cir.1985), *cert. denied,* 475 U.S. 1086, 106 S.Ct. 1469, 89 L.Ed.2d 725 (1986) (footnote added). Thereafter, on October 25, 1985, the government filed the instant complaint.

As stated earlier, suits instituted pursuant to the provisions of the FCA must be brought within 6 years from the date "the violation of section 3729 is committed...." 31 U.S.C. § 3731(b)(1). Defendants contend that, for the purposes of the FCA, the violation was committed at the time the mortgage loan was defaulted, i.e., May 1, 1979, and hence, more than 6 years had elapsed by the time the complaint was filed in this case. In support of their argument, defendants cite *Jankowitz v. United States,* 533 F.2d 538 (Ct.Cl.1976); and *United States v. Goldberg,* 256 F.Supp. 540 (D.Mass.1966).

We find, however, the argument unconvincing in light of other cases on point, in addition to the fact that the cases cited by defendants can be easily distinguished.

In *Jankowitz* the court left for another day the determination of whether or not a cause of action accrues upon default or filing of request for benefits. *Goldberg,* on the other hand, essentially states that accrual does not occur at the time the application to qualify for benefits is submitted but rather when default takes place. It did not, however, explore any further into the difference between time of default and when demand for payment is made. This finding was also rejected in *United States v. Stillwater Community Bank,* 645 F.Supp. 18 (W.D.Okl. 1986).

The FCA applies to instances where monies, subsidies or other benefits are sought from the United States by means of false representations. It covers not only persons or entities which directly cause the government to pay fraudulent claims, but also those who assisted or participated in the

---

**1.** It should be noted that defendant Stella was resentenced on July 8, 1988. *See* Criminal Docket No. 233 in 82–129 (PG). His original sentence remained the same, with the exception of the $686,349 restitution portion of the sentence which was not imposed.

fraudulent scheme. *United States v. Veneziale,* 268 F.2d 504 (3rd Cir.1959). *See also United States v. Consolidated Industries, Inc.,* 720 F.Supp. 919, 921 (N.D.Ala.1989) ("A false claim is actionable [under the FCA] although the claims or false statements were made to a party other than the government, if the payment of the claim would ultimately result in a loss to the United States.") (citation omitted).

■ The mere submission of fraudulent documents to obtain a subsidy or a guarantee by a federal agency does not entail any economic injury to the government. It is not until a demand for payment is made that the economic injury materializes. *United States v. Ekelman & Associates, Inc.,* 532 F.2d 545, 552 (6th Cir.1976) ("No cause of action arises, and, consequently, the statute of limitations does not begin to run, until the mortgage holder presents a claim to the [government or one of its agencies] for *payment* on the guaranty or insurance.") (citations omitted). *See also United States v. First Nat. Bank of Boston,* 707 F.Supp. 1351, 1352 n. 2 (D.Mass. 1988) ("[T]here can be no violation of the False Claims Act until a claim is made.... Liability arises, and the False Claims Act's statute of limitations begins to run, from the date of claim....") (citations omitted); and *United States v. Ettrick Wood Products, Inc.,* 683 F.Supp. 1262, 1263 (W.D.Wis.1988) ("The statute [of limitations contained in the FCA] begins to run when a demand has been made upon the government for performance on the insurance or guarantee.") (citations omitted). In situations such as the one before us, where exposure of federal funds is channeled through a middle institution by way of a guarantee, the mere default by the debtor does not automatically trigger the obligation to pay on behalf of the United States. It is not until the lending institution or mortgage holder makes a claim for execution of the guarantee that federal funds are in fact at stake. Thus, it is at that time that the statute of limitations begins to run. *United States v. Stillwater Community Bank,* 645 F.Supp. at 19. Prior to that date, no claim for payment capable of affecting public funds has been made. *See United States v. Bornstein,* 423 U.S. 303, 309 n. 4, 96 S.Ct. 523, 528, 46 L.Ed.2d 514 (1976) ("[T]he conception of a claim against the government normally connotes a demand for money or for some transfer of public property.") (citations and quotation marks omitted).

■ As plaintiff correctly points out in its motions, the government's obligation to pay did not arise until Merrill Lynch, Hubbard, Inc., the Hospital's mortgagee, assigned to HUD its claims under the mortgage on **October 26, 1979**. Thus, it was then that the 6 years under the statute of limitations started to run. Accordingly, the suit filed **on October 25, 1985** was timely.

## II. MOTION FOR SUMMARY JUDGMENT

### A. SUMMARY JUDGMENT STANDARD

■ In ruling on a motion for summary judgment, the court will look beyond the pleadings to determine whether or not a factual dispute exists which requires that trial be held. If there are no genuine issues of material fact and movant is entitled to judgment as a matter of law, the petition will be granted. *Bird v. Centennial Ins. Co.,* No. 93–1363, 11 F.3d 228, 231 (1st Cir.1993).

### B. COLLATERAL ESTOPPEL

"It is well established that a prior criminal conviction may work an estoppel in favor of the government in a subsequent civil proceeding." *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 568, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951) (citations omitted). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) (citation and footnote omitted). "Collateral estoppel does not involve the 're-examination' of any fact decided by a jury. On the contrary, the whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further fact-finding function to be performed." *Id.* at 336 n. 23, 99 S.Ct. at 654 n. 23.

■ After reviewing the criminal and civil records in this case, we can only conclude that the civil complaint in this case is based

on the same allegations that served as the basis for the defendants' convictions. The defendants have not presented anything to determine otherwise. Therefore, the defendants are collaterally estopped from relitigating the issues subject to this action, and since there is no genuine issue of material fact as to defendants' liability under the FCA, the government is entitled to summary judgment as a matter of law under Fed.R.Civ.P. 56(c).

## C. RETROACTIVITY OF 1986 AMENDMENTS TO THE FCA

While this case was pending, the FCA was amended in several respects. The significant change for purposes of this action was the increase in the damages provision from double to treble damages and the civil penalty from $2,000.00 for each FCA violation to no less than $5,000.00 to not more than $10,-000.00 per violation. Pub.L. No. 99–562, 100 Stat. 3153 (1986), 31 U.S.C. § 3729(a) (1987). The government has moved this court to apply the aforementioned higher provisions of the FCA, and needless to say, the defendants have objected.

■ Courts should apply the law in effect at the time it rules on a controversy " 'unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.' " *F.D.I.C. v. Longley I Realty Trust*, 988 F.2d 270, 273 citing *Bradley v. Richmond Sch. Bd.*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). "Manifest injustice" is determined by balancing "the disappointment of private expectations caused by retroactive application against the public interest in enforcement of the statute." *Longley*, 988 F.2d at 273. *See also McAndrews v. Fleet Bank of Mass., N.A.*, 989 F.2d 13, 15 (1st Cir.1993) ("courts should not apply statutes retroactively when doing so would significantly impair existing substantive rights and, thus, disappoint legitimate expectations."); and *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1082–83 (1st Cir. 1986).

■ There is nothing in the statutory language of the new FCA provisions nor in its legislative history indicating whether or not these particular changes are to be applied retroactively. *See* 1986 U.S.Code Cong. & Admin.News 5266–5303. Therefore, we have to determine whether or not the application of the new damages and penalties provisions will result in "manifest injustice" by considering: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Bradley*, 416 U.S. at 717, 94 S.Ct. at 2019.

In conducting the *Bradley* analysis we find first, that the FCA involves matters of important public policy and not merely private disputes. It addresses a serious issue of fraud against the government and its ability to recover losses resulting from such conduct. Second, defendants have no vested right to a specific remedy amount. Amendments which merely affect the applicable amount of damages are remedial and not punitive in nature and do not constitute substantive modifications to individual rights. "The amendment does not impose a new obligation upon defendants, but merely increases their liability. [Defendants] do not contend that they would have altered their conduct, had they known that they would have been subject to increased liability for filing false claims." *United States v. Pani*, 717 F.Supp. 1013, 1017 (S.D.N.Y.1989); *United States v. Ettrick Wood Prod., Inc.*, 683 F.Supp. 1262 (W.D.Wis.1988). *See United States v. Macomb Contracting Corp.*, 763 F.Supp. 272 (M.D.Tenn.1990) (allowing retroactive application of new damages and fine provisions); *Kelsoe v. Federal Crop Ins. Corp.*, 724 F.Supp. 448, 452 (E.D.Tex.1988) ("After considering the nature and identity of parties involved, the nature of the rights of such parties, and the impact on those rights of applying the 1986 amendments of the FCA to this case, the court concludes that the award of treble damages and increased penalties will not result in a 'manifest injustice'."); *United States v. First Nat. Bank of Boston*, 707 F.Supp. at 1365 ("This court is satisfied that the 1986 Amendments [to the FCA] are remedial in nature, and not designed to affect substantive rights."); and *Gravitt v. General Elec. Co.*, 680 F.Supp. 1162, 1163 (S.D.Ohio), *appeal dismissed without opinion*, 848 F.2d 190 (6th Cir.), *cert. denied*, 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988) ("After careful consideration of the facts in the present case, the

court finds that retroactive application of the 1986 amendments to the False Claims Act does not result in a manifest injustice.... [C]oncern for the public well-being militates toward the immediate application of the amendments.") (footnote omitted). *But see Tyger Const. Co. v. United States,* 28 Fed.Cl. 35 (Ct.Cl.1993) (rejecting retroactive application of statute of limitations amendment based on *Bowen* factors); *U.S. v. Murphy,* 937 F.2d 1032, 1037 (6th Cir.1991) where the court ruled that the retroactive application of the amendment requiring "actual" knowledge of falsity of claim as opposed to "constructive" knowledge was not proper because its application would affect substantive rights and liabilities of the defendant, particularly since liability would be increased by more than $1 million; *United States v. Stocker,* 798 F.Supp. 531 (E.D.Wis.1992) (changes to damages and fine amounts applicable to claims accruing before enactment but limited to actions instituted after effective date of amendment).

Therefore, the 1986 amendments to the damages and penalties provisions of FCA will be applied to this case.

### D. DAMAGES/PENALTIES

As previously discussed, the FCA allows for two types of damages, i.e., treble the actual loss by the government and a penalty for each fraudulent claim.

### (1) Actual Damages

■ The uncontroverted evidence in the record establishes that a total of $686,349 paid from the loan proceeds guaranteed by HUD constituted unauthorized personal gain since it was paid out by reason of the false statements. This particular amount accounts for the difference between the actual expenses for equipment purchased and the inflated invoices submitted for payment. According to the evidence, a total of $1,916,319.30 was disbursed for the purchase of equipment whereas the real expenses for this equipment totalled $1,213,969.41.[2] Defendants argue that credits for payments made by the new mortgagor or during the subsequent bankruptcy proceedings exceed any overpayments and therefore, no single damages remain outstanding. However, the formula for determining how to process a credit is a legal argument, not a factual dispute.

■ Credit for repayment of equipment shall be applied once the actual damages have been trebled, i.e., $2,059,047.00.[3] *United States v. Bornstein,* 423 U.S. 303, 314–16, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976). According to the evidence in the record, the relevant credits add up to $192,465.00 which leaves a balance of $1,866,582 for actual damages.[4]

### (2) Penalties

■ We find that the evidence in the record clearly establishes 20 separate instances of false claims submitted for payment. The first 16 for advance requests and the remaining ones for petitions for release of escrow funds.

### ADVANCES

| ADVANCE NO. INDICTMENT OVERT ACTS ¶ 11 | DATE |
| --- | --- |
| 15 | 4/3/75 |
| 17 | 6/11/75 |
| 18 | 7/9/75 |
| 19 | 8/14/75 |
| 20 | 9/12/75 |
| 22 | 11/17/75 |
| 29 | 4/13/75 |
| 31 | 5/25/76 |
| 32 | 6/22/76 |
| 33 | 7/28/76 |
| 34 | 8/27/76 |
| 35 | 9/27/76 |
| 36 | 10/27/76 |
| 41 | 3/4/77 |
| 42 | 3/8/77 |
| 43 | 4/20/77 |

### REQUESTS FOR RELEASE OF ESCROW FUNDS

| DATE | INDICTMENT |
| --- | --- |
| 6/15/77 | OVERT ACTS ¶ 29 |
| 9/13/77 | COUNT 2 ¶ 2 |
| 12/21/77 | COUNT 3 ¶ 2 |
| 1/5/78 | COUNT 4 ¶ 2 |

2.

| Amounts approved | $1,916,319.30 |
| --- | --- |
| Actual cost | − 1,213,969.41 |
| Unauthorized profits | $ 686,349.00 |

3. $686,349.00 × 3 = $2,059,047.

4.

| Trebled damages | $2,059,047.00 |
| --- | --- |
| Credits | − 192,465.00 |
| DAMAGES DUE | $1,866,582.00 |

As previously discussed, the increased penalties provided for in the recent amendments may be applied in this case. The statute allows for penalties ranging from $5,000 to $10,000 for each fraudulent claim. However, we see no particular reason for applying the higher amount and will utilize $5,000 for each claim instead. *See United States v. Fliegler*, 756 F.Supp. 688, 694 (E.D.N.Y.1990). Accordingly, based on the **20** aforementioned false claims, defendants are liable for penalties in the amount of **$100,000**.[5]

### III. CONCLUSION

In view of the above, defendants' request that the action be dismissed as time-barred is **DENIED.**

Plaintiff's petition for Summary judgment is **GRANTED** as follows. Defendants are hereby found jointly liable to the claims asserted in the complaint in the following amounts: [6]

TREBLE DAMAGES—$1,866,582.00
PENALTIES            —$100,000.00

Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

**5.** 20 × $5,000 = **$100,000**

**6.** The parties are reminded that the monies originally consigned in the interpleader action entitled *Banco Santander de Puerto Rico v. United States of America*, Civ. No. 90–2556 (RLA) and deposited in Savings Account No. **01016336** at

CITIBANK, San Juan Branch, now appear in the name of CLERK, U.S. DISTRICT COURT (UNITED STATES V. EDGAR STELLA PEREZ, CIV. NO. 85–2197 (RLA). *See* order filed on October 25, 1993 in Civ. No. 90–2556 (RLA). Withdrawals shall only be effected by order of the Court.