UNITED STATES of America, Plaintiff,

v.

OAKWOOD DOWNRIVER MEDICAL CENTER, a nonprofit Michigan corporation, West Outer Drive Medical Center, a Michigan co-partnership, Eldon W. Erickson, M.D., Phillip D. Gelbach, M.D., Kent L. Winter, and Zack Fields & Company, P.C., a Michigan corporation, Defendants.

No. 87–CV–72500–DT.

United States District Court,
E.D. Michigan, S.D.

May 20, 1988.

Polly A. Dammann, Michael F. Hertz, Rita S. Geier, U.S. Dept. of Justice, Civil Div., Washington, D.C., L. Michael Wicks, Office of the U.S. Atty., Detroit, Mich., for plaintiff.

Dennis A. Dettmer, Andrew B. Wachler, Mark Kopson, Derek I. Meier, Edward C. Pedersen, Detroit, Mich., Daniel Noveck, Birmingham, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

Before the Court are motions to dismiss filed by each of the Defendants.[1] The Plaintiff has responded and this matter is ripe for disposition.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the Plaintiff's Complaint. *Davey v. Tomlinson,* 627 F.Supp. 1458, 1463 (E.D.Mich.1986); *Hudson v. Johnson,* 619 F.Supp. 1539, 1542 (E.D.Mich.1985). "In evaluating the propriety of a dismissal under Rule 12(b)(6), the factual allegations in the complaint must be treated as true." *Janan v. Trammell,* 785 F.2d 557, 558 (6th Cir.1986); *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). Plaintiff's claims shall not be dismissed unless it is established that the Plaintiff cannot prove beyond doubt any set of facts to support his claim that would entitle him to relief. *Janan,* 785 F.2d at 558.

Plaintiff bases its claim against the Defendants under the False Claims Act, 31 U.S.C. § 3729, as amended on October 27, 1986. The Plaintiff alleges that the Defendant West Outer Drive Medical Center (WODMC) provided various medical services to the Defendant Oakwood Downriver Medical Center (Oakwood), formerly The Lynn Hospital. Plaintiff claims that Oakwood was a provider of medical services under the Medicare program; WODMC was not.

The remaining Defendants either oversee the business of Oakwood or supply services. Defendant Dr. Erickson is allegedly Oakwood's Chief Executive Officer and a partner in WODMC. Defendant Dr. Gelbach is a member of Oakwood's Board of Trustees and part-owner of WODMC. Defendant Zack Fields and Company, P.C. was allegedly the certified public accounting firm that prepared various medicare forms for Oakwood and WODMC. Defendant Kent Winter is a certified public accountant employed at Zack Fields and who allegedly worked on the Oakwood and WODMC accounts.

Plaintiff alleges that Defendants submitted false claims to the government seeking Medicare reimbursement. Plaintiff asserts the following allegations:

19. Plaintiff, through HHS, administers the Health Insurance for the Aged Act, established by Subchapter XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.* ("Medicare").

20. At all times relevant to this complaint, HHS administered the Medicare program in the State of Michigan through a private contractor ("fiscal intermediary"), Blue Cross Blue Shield of Michigan ("BCBSM"), as authorized by 42 U.S.C. § 1395u. Under this administration, BCBSM reviews and approves claims submitted for reimbursement by Medicare providers, and makes payment on those claims which appear to be eligible for reimbursement under the Medicare program.

21. A hospital seeking reimbursement by Medicare must submit a cost reporting form each year. During the period relevant to this complaint, the cost reporting form was designated as a form 2552. This form includes a Statement of Cost of Services From Related Organizations (worksheet A–8–1), which requires the hospital to answer "yes" or "no" in response to the following question:

Are there any costs included on Worksheet A which resulted from transactions with related organizations

. . .

If the hospital answers in the affirmative, it must then enumerate each of

---

1. Defendant West Outer Drive Medical Center filed a motion to dismiss in which Defendants Oakwood Downriver Medical Center, Dr. Phillip D. Gelbach, and Dr. Eldon W. Erickson joined. Defendants Kent L. Winter and Zack Fields & Co., P.C., filed a separate motion to dismiss. All of these motions, however, address a common defense; i.e., that the Plaintiff cannot retroactively enforce the provisions of the False Claims Act, 31 U.S.C. § 3729, as amended October 27, 1987, to acts which occurred prior to the amendment.

the related organizations and each of the costs involved.

22. Medicare will only reimburse a provider for certain costs involving related organizations. HCFA Publication 15, Part 1, defines a related organization or party as follows:

1002.1 Related to the provider means that the provider to a significant extent is associated or affiliated with, or has control of, or is controlled by, the organization furnishing the services, facilities, or supplies.

1002.3 Control exists where an individual or an organization has the power, directly or indirectly, significantly to influence or direct the actions or policies of an organization or institution.

1004.3 The term "control" includes any kind of control, whether or not it is legally enforceable and reality of the control which is decisive ...

23. According to HCFA Publication 15, Part 1, 1000.

*Principle*

Costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization. However, such cost must not exceed the price of comparable services, facilities, or supplies that could be purchased elsewhere. The purpose of this principle is two-fold: (1) to avoid the payment of a profit factor to the provider through the related organization (whether related by common ownership or control), and (2) to avoid payment of artificially inflated costs which may be generated from less than arm's-length bargaining ...

24. During the period of time beginning in or before 1980 through in or about 1984, Oakwood received periodic interim payments ("PIP's") under the Medicare program during the year.

25. The PIP payments received by Oakwood during the period of time beginning in or before 1980 through in or about 1984 were based in part upon the information and representations in the cost report form 2552's submitted by Oakwood for the prior year.

26. Oakwood began submitting Medicare cost reports in or about 1966.

Plaintiff's First Amended Complaint, ¶¶ 19–26, pp. 7–9.

Plaintiff alleges that from 1981–1984, the 2552 forms submitted on behalf of Oakwood falsely declared that none of Medicare reimbursement costs sought by Oakwood involved related parties. Specifically, Plaintiff claims that Oakwood knew that WODMC was a related party, but failed to so specify this relationship. Plaintiff accuses the remaining Defendants of knowing the falsehood and participating in the preparation of the false documentation.

On July 3, 1987, Plaintiff filed a complaint against these Defendants. After granting a motion for more definite statement, Plaintiff filed an amended complaint on October 28, 1987. All three (3) of the Counts seeking relief are based on the False Claims Act, 31 U.S.C. §§ 3729(a)(1), (2), (3), and (7) as amended. Defendants have filed motions to dismiss based on various grounds. The Court will address each separately.

I. DEFENDANTS' MOTION TO DISMISS BECAUSE THE ACT'S 1986 AMENDMENTS TAKE PROSPECTIVE EFFECT AND THUS DO NOT APPLY TO PRE–AMENDMENT ACTIVITIES

■ Plaintiff's claim is based on the 1986 amendments to the False Claims Act. The activities that allegedly violated this Act occurred prior to 1984. Defendants maintain that the amended provisions must apply prospectively since there is no Congressional intent regarding retroactive affect. Plaintiff argues otherwise.

Prior to the 1986 amendments, the False Claims Act provided in pertinent part:

A person not a member of an armed force of the United States is liable to the United States Government for a civil penalty of $2,000, an amount equal to 2 times the amount of damages the

Government sustains because of the act of that person, and costs of the civil action, if the person—

(1) knowingly presents, or causes to be presented, to an officer or employee of the Government or a member of an armed force a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved;

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

(4) has possession, custody, or control of public property or money used, or to be used, in an armed force and, intending to defraud the government or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

(5) authorized to make or deliver a document certifying receipt of property used, or to be used, in an armed force and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true; or

(6) knowingly buys, or receives as a pledge of an obligation or debt, public property from a member of an armed force who lawfully may not sell or pledge the property.

31 U.S.C. § 3729 (Sept. 13, 1982, P.L. 97–258). This language provided conflicting judicial interpretation of the term "knowingly." See *United States v. Hughes,* 585 F.2d 284 (7th Cir.1978) (the government need not prove "intent" to defraud); *United States v. Ekelman & Associates, Inc.,* 532 F.2d 545 (6th Cir.1976) (government must show actual knowledge); *United States v. Cooperative Grain and Supply Co.,* 476 F.2d 47, 56 (8th Cir.1973) (the knowing submission of a false claim is sufficient); *United States v. Aerodex, Inc.,* 469 F.2d 1003, 1007 (5th Cir.1972) (intent to defraud); *United States v. Mead,* 426 F.2d 118 (9th Cir.1970) (intent to defraud); *Fleming v. United States,* 336 F.2d 475 (10th Cir.1964), *cert. denied,* 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795 (1965) (knowingly submit a false claim). See also *United States v. Davis,* 809 F.2d 1509, 1512 (11th Cir.1987) (the present statute, as its predecessor, requires specific intent).

Further, the courts were split on the requisite burden of proof. While most endorsed a preponderance of the evidence standard; *Federal Crop Insurance v. Hester,* 765 F.2d 723, 727–28 (8th Cir.1985); *United States v. Thomas,* 709 F.2d 968, 971–72 (5th Cir.1983); *Thevenot v. National Flood Ins. Program,* 620 F.Supp. 391, 394 (W.D.La.1985); *United States v. Cato Brothers,* 175 F.Supp. 811, 814 (E.D.Va.), *rev'd on other grounds,* 273 F.2d 153 (4th Cir.1959), *cert. denied,* 362 U.S. 927, 80 S.Ct. 753, 4 L.Ed.2d 746 (1970); *United States v. Gardner,* 73 F.Supp. 644, 647 (N.D.Ala.1947); others have applied a clear and convincing standard; *Ekelman,* 532 F.2d at 548.

The False Claims Act, 31 U.S.C. § 3729, as amended on October 27, 1986, provides in pertinent part that anyone who:

(a)(7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person ...

\*    \*    \*    \*    \*    \*

(b) *Knowing and knowingly defined.* For purposes of this section, the terms 'knowing' and 'knowingly' mean that a person, with respect to information—

(1) has actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of information, and no proof of specific intent to defraud is required.

Thus, the differences between the original statute and the subsequent amendment

is that the civil penalty is increased and the term "knowing" is now defined.

Defendants argue that the "change" in the statute is substantive. Defendants cite to the previous Sixth Circuit rule which required a showing of actual knowledge to establish a claim under The False Claims Act, (*Ekelman, supra*) and that the amended Act's lower burden of proof requirement creates "new" liability. The Court disagrees. The amendment merely defined the term "knowingly," it did not create a new substantive liability. As stated in the legislative history:

> The False Claims Reform Act also modernizes jurisdiction and venue provisions, increases recoverable damages, raises civil forfeiture and criminal penalties, *defines the mental element* required for prosecution and *clarifies the burden of proof* in civil false claim actions.

False Claims Amendments Act of 1986, S.Rep. No. 99–345, 99th Cong., 2d Sess. 2, *reprinted in* 1986 U.S.Code Cong. & Ad. News 5266, 5267. (emphasis added). Further:

> Compounding the investigative problems are also various litigative hurdles. As a civil remedy designed to make the Government whole for fraud losses, the civil False Claims Act currently provides that the Government need only prove that the defendant knowingly submitted a false claim. However, this standard has been construed by some courts to require that the Government prove the defendant had actual knowledge of fraud, and even to establish that the defendant had specific intent to submit the false claim ... The Committee believes this standard is inappropriate in a civil remedy and presently prohibits the filing of many civil actions to recover taxpayer funds lost to fraud.

*Id.,* 5271–5272 (footnote omitted). Based on the above, it is clear that a new substantive count was not added to the False Claims Act but rather that liability has always ensued when one submits a false claim to the government regardless if it was actually intended to defraud the government.

This analysis is crucial. The Supreme Court of the United States has treated substantive and procedural changes in legislation differently. When the change is substantive, the Supreme Court has held that the legislation must be treated prospectively, unless Congress has stated otherwise. *Bennett v. New Jersey,* 470 U.S. 632, 638, 105 S.Ct. 1555, 1559, 84 L.Ed.2d 572 (1985) ("changes in substantive requirements for federal grants [under Title I of the Elementary and Secondary Education Act, 20 U.S. C. 2701 *et seq*] should not be presumed to operate retroactively."); *United States v. Security Industrial Bank,* 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982). In comparison, a procedural change in the law is given retroactive treatment, unless Congress specifies otherwise or in doing so would result in manifest injustice. *Bradley v. School Bd. of City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed. 2d 476 (1974).

The Court has held that the amendments merely define the level of knowledge required and the burden of proof. These are not "changes" since Congress had not addressed these issues previously. Instead, the failure to do so necessitated judicial interpretations, many of which were conflicting. The 1986 amendments are purely definitional. Further, although the amendment extinguishes the previous rulings in the Sixth Circuit, the Court notes that several other circuits will not be affected by the amendments since their rulings are identical to the "new" legislation. It is clear to this Court the 1986 amendments to the False Claims Act were intended only to address conflicting decisions by the circuit courts, not to change existing law. The Court finds that the amendments are procedural, and, in doing so, this Court must follow *Bradley, supra.*

*Bradley* requires that a presumption of retroactivity applies unless (1) Congress states otherwise, or (2) manifest injustice will befall the defendant if an act is applied retroactively. *Id.,* 94 S.Ct. at 2016. Initially, the Court notes that there is no Congressional intent regarding whether the amendments are to apply retroactively or

prospectively. Instead, based on the material presented to this Court, there appears to be a conflict regarding this issue. Thus the Court finds that there is no clear Congressional intent that the 1986 amendments are only to be applied prospectively.

Next, the Court must address whether giving the amendments retroactive effect will create manifest injustice to these Defendants. The Court is guided by the following three factors:

(1) the nature and identity of the parties;

(2) the nature of their rights; and

(3) the nature of the impact of the change in the law upon those rights.

*Bradley*, 416 U.S. at 717, 94 S.Ct. at 2019. No one factor is dispositive. Instead, the issue is whether the "disappointment of private expectations caused by the retroactive application will outweigh the public interest in enforcement of the new rule." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1085 (1st Cir. 1986).

The first *Bradley* factor addresses the nature of the parties involved. In this matter, this is not a situation between individual parties, but instead addresses a situation of great national concern, i.e. government fraud. Government fraud causes the loss of billions of dollars annually in public funds, may pose a serious threat to human life, for example, when a contractor provides defective goods, and this type of fraud "erodes public confidence in the Government's ability to efficiently and effectively manage its programs." S.Rep. No. 99–345, 99th Cong., 2d Sess. 3, *reprinted in* 1986 U.S.Code Cong. & Ad.News 5266, 5267. In matters of great national concern, the private interests must be sacrificed for national purposes. *United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801); *United States v. Marengo County Comm'n*, 731 F.2d 1546 (11th Cir.1984). Therefore, the Court finds that the first *Bradley* factor weighs in favor of the Plaintiff.

The second *Bradley* factor requires the Court to consider whether retroactive application infringes or deprives the Defendants "of a right that had matured or become unconditional." 416 U.S. at 720, 94 S.Ct. at 2020. The Court does not find that Defendants had a "matured" right to the imposition of double as opposed to treble damages against them, nor is there a "matured" right to *Ekelman* standard of liability. Thus, the second factor of the *Bradley* test weighs in favor of the Plaintiff.

The third *Bradley* factor requests that the Court determine the nature of the impact that the change of the law has upon these Defendants. *Id.*, 94 S.Ct. at 2020–2021. The concern here is the possibility of new, unanticipated obligations which may be imposed on the Defendants without notice nor opportunity to be heard. *Id.*, 94 S.Ct. at 2021.

If the new statutory obligations would have caused the defendant to alter its conduct had it known of its obligations, a court is more likely to find manifest injustice in applying the new law retroactively.

*United States v. Hill*, 676 F.Supp. 1158, 1170 (N.D.Fla.1987). Initially, the Court finds that the changes in the damage and foreefeiture provisions of the Act do not alter liability, nor change conduct previously determined lawful. Instead, these provisions merely incorporate stiffer penalties for fraudulent conduct. Further, the Court finds the argument that Defendants would have altered their conduct if they knew that the standard of liability was lower than that originally enunciated in *Ekelman* to be strained and without merit. Although applicable to this Circuit, the *Ekelman* standard was not the majority rule in the country. Additionally, the 1986 amendments served a definitional function rather than a change in the existing law. For these reasons, the Court concludes that the third factor of the *Bradley* test weighs in favor of the Plaintiff.

Based on the above, the Court concludes that the retroactive application of the 1986 amendments will not create manifest injustice on these Defendants. Further, even if factor three were in favor of the Defendants, the Court finds on balance that the national concerns addressed in factors one and two clearly outweigh the impact retro-

active application would have on these Defendants. Finally, the Court finds that the disappointment of these Defendants' private expectations caused by the retroactive application of the 1986 amendments are clearly and severely dwarfed and outweighed by the public's interest in the enforcement of the False Claims Act and its amendments.

At this juncture, the Court recognizes a case which dealt squarely the issues presented in this matter. In *United States v. Hill,* 676 F.Supp. 1158 (N.D.Fla.1987), the Court held that the Federal Claims Act, 31 U.S.C. § 3729, as amended on October 27, 1986, may be applied retroactively to events which occurred prior to the date of the amendments. The *Hill* Court found that Congressional intent indicated that the amendments would apply retroactively. *Id.* at 1167–1168. The *Hill* Court noted three Congressional objectives in which the 1986 amendments were intended to address. First, the imposition of substantial forfeitures and treble damages are a deterance to defrauding the government. *Id.* at 1167. Second, the *qui tam* provisions of the 1986 amendments would enhance private citizenship assistance, allowing them to come forward in suits under this Act to curb governmental fraud. *Id.* Finally, the expressed definition of the standard of liability would further remedial actions by allowing retroactive enforcement of the 1986 amendments. *Id.* at 1168.

Further, the *Hill* Court found that the defendants would not suffer manifest injustice by the retroactive enforcement of the 1986 amendments. *Id.* at 1172. As the *Hill* Court stated:

> [although] the defendants may contend that they relied on the provisions of the False Claims Act prior to its amendment, such reliance is not plausible and is substantially outweighed by the national concern in immediate application of the amendments, Thus, under the 1986 amendments, the defendants are exposed to greater damages and forfeitures, and there is no requirement for the Govern-

ment to demonstrate specific intent to defraud in order to prove liability.

*Id.* (footnote omitted).

This Court adopts the analysis and holding of *Hill, supra.* See also *United States v. Ettrick Wood Products, Inc.,* 683 F.Supp. 1262 (W.D.Wis.1988) (allowing retroactive application of the 1986 amendments of the False Claims Act). In doing so, the Court finds that Plaintiff has stated a claim against these named Defendants. Therefore, Defendants' motion for dismissal under F.R.Civ.P. 12(b)(6) on the issue of retroactivity is DENIED.

### II. EX POST FACTO

■ Defendants Winter and Zack Fields filed a motion claiming that the retroactive application of an amended law which increases civil damages violates the *ex post facto* clause found in Art. I, Section 9 of the Constitution of the United States. The Court notes that the *ex post facto* clause only applies to criminal cases. *Galvan v. Press,* 347 U.S. 522, 531, 74 S.Ct. 737, 742, 98 L.Ed. 911 (1954). Therefore, Defendants Winter and Zack Fields motion to dismiss based on the *ex post facto* clause is DENIED.

### III. DUE PROCESS

■ Defendants Winter and Zack Fields blanketly assert that the amendments violate the due process clause, presumably of the Fifth Amendment to the United States Constitution. These Defendants believe that the retroactive applications of the amendments, especially the treble damage provision, would violate this clause.

These Defendants, however, fail to identify the violation. Since statutes may be applied retroactively, Defendants' failure to specify the nature of their defense mandates the dismissal of this claim. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984); *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 16, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). Therefore, Defendants Winter and Zack, Fields motion to dismiss based on violations of the due process clause is DENIED.

## IV. SUMMARY JUDGMENT

 Defendants Winter and Zack Fields request this Court grant their motion for summary judgment under F.R. Civ.P. 56. Defendant Winter, by filing his affidavit, asserts that he did not knowingly, recklessly, or with deliberate ignorance prepare or submit false claims on behalf of Oakwood.

The Plaintiff's responses to this motion are appropriate. First, this motion was filed almost nine (9) months prior to discovery cut-off and thus matters which may dispute the affidavit may yet be discovered. Second, the attachments to Plaintiff's brief in response to Defendants' motion for summary judgment clearly raise a fact question regarding whether Defendant Winter knew the substance of the false forms. Finally, as stated previously, the Defendants' actual and stated intent may not absolutely excuse them from liability under the False Claims Act; i.e. the Plaintiff need not prove actual intent to submit false claims.

Therefore, based on the above, Defendant Winters and Zack Fields motion for summary judgment is DENIED.

## V. DEFINITE STATEMENT

 Defendants Winter and Zack Fields have filed a motion for more definite statement. This Court has previously granted such a motion and Plaintiff was compelled to amend the complaint. Under the False Claims Act, Plaintiff must allege that the Defendants knowingly presented or caused to be presented a false or fraudulent claim for approval or payment. 31 U.S.C. § 3729. After reviewing this matter, the Court finds that Plaintiff has sufficiently stated a claim under the False Claims Act. Therefore, Defendants Winter and Zack Fields motion for a more definite statement is DENIED.

## VI. CONCLUSION

The motions for dismissal filed by each of the Defendants is DENIED. Defendant Winter and Zack Fields motion for summary judgment and motion for more definite statement are both DENIED.

IT IS SO ORDERED.