**UNITED STATES of America, ex rel. STINSON, LYONS, GERLIN & BUSTAMANTE, P.A., Plaintiff,**

v.

**PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY, Defendant.**

No. 88–0508–Civ.

United States District Court, S.D. Florida.

June 30, 1989.

Luis C. Bustamante, Tracy E. Tomlin, Stinson Lyons Gerlin & Bustamante, P.A., Miami, Fla., for plaintiff.

Joseph P. Klock, Jr., John W. Little, III, Steel Hector and Davis, Miami, Fla., for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS.

ATKINS, District Judge.

THIS CAUSE is before the court on defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Failure to State a Claim upon which Relief can be Granted, and Failure to Plead Fraud with Sufficient Particularity. Upon consideration of the pleadings, the record as a whole, the relevant law, and a hearing on subject matter jurisdiction, it is

ORDERED AND ADJUDGED that the motion is DENIED except that as the complaint purports to state a claim for conspiracy under 31 U.S.C. § 3729(a)(3), the motion is GRANTED.

## I. PROCEDURAL HISTORY

The plaintiff, the law firm of Stinson, Lyons, Gerlin & Bustamante, P.A. ("Stinson"), filed this action pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.* (Supp.1986) ("Act"). Under the Act, a private plaintiff or *"qui tam"* plaintiff may bring an action on behalf of the United States for a violation of the Act. Although the United States may elect to intervene after receiving the complaint, it filed a declination of appearance in the present action.

## II. ISSUES

This court must determine: (1) whether the 1986 amendments to the Act apply retroactively to this case; (2) if so, whether this court has subject matter jurisdiction; (3) if so, whether the amended complaint states a claim for relief; (4) and finally, whether the plaintiff has alleged fraud with sufficient particularity.

## III. FACTS

The defendant, Provident Life and Accident Insurance Company ("Provident") has moved to dismiss this action for lack of subject matter jurisdiction on the ground that Stinson does not qualify as a proper *qui tam* plaintiff under the express terms and intent of the Act. *See* 31 U.S.C. § 3730(e)(4)(A), (B) (West Supp.1986). Provident has also moved to dismiss for failure to plead fraud with sufficient particularity and failure to state a claim upon which relief can be granted.

Stinson brought this action in the name of the United States pursuant to the *qui tam* provisions of the Act. Stinson, as a private citizen-relator, alleged that Provident defrauded the Government by shifting the responsibility for payment of insurance claims to Medicare and the private sector despite Provident's knowledge and understanding of its obligations under section 116(a) of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). In an effort to reduce federal spending, Congress passed TEFRA to amend the law to make Medicare the secondary payer to employer group health plan coverage for persons age 65 to 69 who were employed at the time the services were rendered. This provision applies to the group health plans of employers of twenty or more. Section 116(a) entitles employees and their spouses age 65 to 69 to the same health coverage under the same conditions as any employee under age 65; group health plans are now primary carriers for employees aged 65 to 69.

Stinson alleges that Provident engaged in a scheme to defraud the Government by allowing Medicare to pay as primary and by avoiding or decreasing its obligation to reimburse Medicare or its beneficiaries. Stinson learned of the alleged fraud during its representation of Mr. Armolon Leonard in a previous lawsuit. Mr. Leonard was 67 at the time of an automobile accident that was the subject of that lawsuit. After reviewing Mr. Leonard's policy and corresponding at length with Provident concerning Mr. Leonard's claims, the Stinson firm concluded that Provident's claims handling practices violated federal law by paying secondary to Medicare instead of primary.

Stinson wrote a letter to the Honorable Claude Pepper on December 5, 1984, to shed light on Provident's handling of insurance payments. *See* Plaintiff's Exhibit A. In March of 1985, Provident filed a Complaint for Declaratory Relief naming Mr. Leonard as the defendant (the *"Leonard* litigation").

On December 26, 1985, the Stinson firm corresponded with Robert A. Streimer, Director of the Health Care Financing Administration's Bureau of Eligibility, Reimbursement and Coverage. Mr. Streimer was asked to render an opinion concerning Mr. Leonard's policy. *See* Plaintiff's Exhibit B. Mr. Streimer determined that Medicare should have been a secondary payer to Mr. Leonard's policy.

In August 1986, the Stinson firm obtained the affidavit of Ms. Anna Mae Hillenbrand which had been filed during discovery in the *Leonard* suit. The affidavit describes the unsatisfactory processing of Ms. Hillenbrand's insurance claims by Provident.

Armed with this information, the Stinson firm filed this action in March 1988. Under the Act, a private party is given standing to sue provided it can satisfy the jurisdictional requirements of the Act. Ten months after the suit was filed, the United States filed its Notice of Declination of Appearance.

## IV. HISTORY AND PURPOSE OF THE FALSE CLAIMS ACT

The False Claims Act, 31 U.S.C. § 3729 *et seq.* (West Supp.1986) establishes a cause of action against persons making false claims upon the United States. The Act was adopted during the Civil War to combat the massive fraud being committed against the Government. 132 Cong.Rec. H6482 (daily ed. Sept. 9, 1986) (statement of Rep. Rodino). To encourage action against defrauders, Congress authorized private citizens to bring civil actions against wrongdoers on the Government's behalf and to retain a portion of any recovery. Originally, a private plaintiff was entitled to one-half of any recovery. The Act's original language permitted a private

citizen to file a suit even though he contributed nothing to the exposure of the fraud. In the late 1930's, this resulted in "parasitical suits" in which the plaintiff-relator successfully sued by simply copying information already contained in governmental files and indictments. *See Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). The Court in *Hess* ruled that the statute, as then written, did not require that the informer bring original information to the suit. *Id.*

The Court's ruling in *Hess* prompted the introduction in 1943 of several bills to change the *qui tam* provisions of the Act. The House of Representatives passed a bill to abolish *qui tam* actions. The Senate, however, sought to promote *qui tam* actions that were based either upon information not in the possession of the United States *or* upon information in the possession of the United States of which the *qui tam* relator was the original source. *United ed States ex rel. the State of Wisconsin Dept. of Health and Social Services v. Dean,* 729 F.2d 1100, 1104 (7th Cir.1984). The amendment was passed in 1943, with the second part or jurisdictional bar "exception" of the Senate bill deleted. *Id.*

Thus, the 1943 Act permitted only those persons providing new information to sue. Act of Dec. 23, 1943, ch. 377, § 1, 57 Stat. 608. The amendment provided that the relator first file an action in court and then serve the Attorney General with a copy of the complaint and a written disclosure of any evidence and information in his possession.

In 1986, Congress again amended the Act. The amendments were prompted by restrictive judicial interpretations of the Act's liability standard, the burden of proof, and by the apparent inequities imposed on private citizens by the statute's *qui tam* jurisdictional bar. *See United States ex rel. LaValley v. First National Bank of Boston,* 707 F.Supp. 1351, 1355 (D.Mass.1988); S.Rep. No. 99–345, 99th Cong., 2d Sess. 3–4, *reprinted in* 1986 U.S. Code Cong. & Ad.News 5266, 5267–69.

With respect to the *qui tam* provisions, Congress intended the 1986 amendments to

provide the Government with "a more useful tool against fraud in modern times," and "to encourage any individual knowing of Government fraud to bring that information forward." S.Rep. No. 99–345 at 2, 1986 U.S.Code Cong. & Ad.News 5266–67 (quoted in *United States v. Hill*, 676 F.Supp. 1158, 1165 (N.D.Fla.1987)); *see also* 132 Cong.Rec. H6482 (daily ed. Sept. 9, 1986) (statement of Rep. Glickman) (incentives for citizens to file such suits are increased).

In enacting the new 1986 provisions, Congress realized that the government might not have the resources necessary to bring an action whenever information at its disposal was capable of forming the basis of a claim. *See* 132 Cong.Rec. S11243 (daily ed. Aug. 11, 1986) (statement of Sen. Grassley) (cited in *United States ex rel. Houck v. Folding Carton Administration Committee*, No. 87–C–1253, slip op. (N.D.Ill. Jan 20, 1988) (1988 WESTLAW 74829). But Congress was also concerned with preventing opportunistic lawsuits filed by *qui tam* plaintiffs. The "original source doctrine" represents a compromise between these competing interests. 132 Cong.Rec. at S11244 (cited in *Houck*, at 4).[1]

## V. RETROACTIVE APPLICABILITY OF THE 1986 AMENDMENTS

### A. *Standard for Retroactive Application of Statutes*

■ Stinson describes conduct that allegedly took place prior to enactment of the 1986 amendments. Provident argues that the 1986 amendments changed the scienter requirements for "knowing violations" and thus they should not be retroactively ap-

plied in this case. This issue has not been resolved by the appellate courts; those district courts that have considered the question have reached different conclusions.[2]

An analysis of retroactive application of legislation must begin with *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). The district court awarded attorney's fees to a prevailing plaintiff although, at the time the case was litigated, no specific statute sanctioned such an action. During the pendency of the appeal, Congress enacted an attorneys' fees provision which gave authority to the federal courts to award a reasonable attorney's fee to prevailing party. Despite the current legislation, the appellate court reversed the district court's decision. The Supreme Court granted certiorari, vacated and remanded. In an unanimous opinion, the Court stated that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. In concluding that the new legislation applied to the pending case, the Court applied a three part test which identified "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Id.* at 717, 94 S.Ct. at 2019.

The Court reasoned that the greatest danger of "manifest injustice" would occur from a retroactive application of a statute in a situation involving private parties and individual rights. Retroactive application that would affect such rights is discouraged, 416 U.S. at 718, 94 S.Ct. at 2019, but

---

1. A *qui tam* plaintiff may not bring an action based upon public disclosures unless the person bringing that action is an original source of the information. 31 U.S.C. § 3730(e)(4)(A). "Original source" is defined as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B).

2. The 1986 Amendments added the definition of the term "knowing" and "knowingly":

For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information—
(1) has actual knowledge of the information;
(2) acts in deliberate ignorance of the truth or falsity of the information; or
(3) acts in reckless disregard of the truth or falsity of the information,
and no proof of specific intent to defraud is required.
31 U.S.C. § 3729(b).

when the dispute involves considerations of national concern, "the court must decide according to existing laws." *Id.* at 719, 94 S.Ct. at 2020 (quoting *United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801)). To determine whether a statute addresses an issue of "great national concern," a court must look to the circumstances surrounding its enactment as well as the expressions of congressional intent. 416 U.S. at 719, 94 S.Ct. at 2020.

A statute affecting substantive rights and liabilities is presumed to have prospective application. *See, e.g., Bennett v. New Jersey*, 470 U.S. 632, 639, 105 S.Ct. 1555, 1559, 84 L.Ed.2d 572 (1985). It is important to identify the nature of the rights at issue since a statute will not be applied retroactively "when to do so would infringe upon or deprive a person of a right that had matured or become unconditional." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020.[3]

Finally, *Bradley* addressed the "nature of the impact of the change in law upon existing rights," and "the possibility that the new and unanticipated obligation may be imposed upon a party without notice or an opportunity to be heard." 416 U.S. at 720, 94 S.Ct. at 2020. The court concluded that no change in the substantive obligation of the parties occurred because the new statute "merely serve[d] to create an additional source for the defendant's potential obligation to pay attorney's fees." *Id.* at 721, 94 S.Ct. at 2021.

### B. *Application of the 1986 Amendments to this Case*

Under the *Bradley* rule, a court must apply the law in effect at the time that it renders its decision unless statutory direction or legislative history dictates the contrary or unless "manifest injustice" would result. 416 U.S. at 719, 94 S.Ct. at 2020. If the legislative history supports retroactivity, the *Bradley* presumption should control. 416 U.S. at 715–16, 94 S.Ct. at 2018–19.

### 1. *Statutory Direction or Legislative Intent*

Neither the language of the 1986 amendments to nor its legislative history directly addresses the issue of retroactivity. Legislative history does indicate, however, that the legislators were anxious for the new amendments to take effect immediately. S.Rep. No. 345, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.Code Cong. & Admin. News 5266, 5267; *see also United States v. Board of Education of Union City*, 697 F.Supp. 167 (D.N.J.1988). Neither the language of the statute nor congressional intent rebuts the *Bradley* presumption of retroactive application.

Statements by members of Congress made subsequent to the enactment of the amendments suggest that Congress intended the 1986 amendments to apply to pre-amendment conduct but not necessarily to suits filed prior to its enactment. 133 Cong.Rec. H9515 (daily ed. November 3, 1987) (statement of Rep. Berman); *LaValley*, 707 F.Supp. at 1360. Congressman Berman, one of the authors of the bill, concluded that,

> [B]ased on Supreme Court precedent, such express language [retroactive application] was not necessary and that language should be added to the bill only if Congress intended it to apply prospectively ... *Bradley* ... expressly said that courts should presume that Congress intended retroactive application by its mere silence on the issue. It was therefore apparent that it was unnecessary to be explicit about retroactivity, as the courts would infer it from our silence.

---

**3.** Provident asserts that *Bradley* is inapplicable in this case because it involved a procedural issue, i.e. attorney's fees. Provident's assertions are misguided. The *Bradley* case is one of the most often cited cases in the analysis of the retroactive application of statutes.

Provident further argues that *Bennett* is a limitation of the *Bradley* rule regarding infringement on substantive rights. *Bennett* does not limit *Bradley*. The court in *Bennett* found that manifest injustice would result from retroactive application of an amendment to a statute. *Bennett* applied the *Bradley* factors, which displaced the presumption of retroactivity. *Hill*, 676 F.Supp. at 1169–70, n. 16. n. 17; *see also LaValley*, 707 F.Supp. at 1362.

133 Cong.Rec. H9515 (November 3, 1987); *LaValley*, 707 F.Supp. at 1360. Congressman Glickman also stated,

[O]ur reliance on the *Bradley* presumption is made pretty clear by the fact that around the same time as we enacted the False Claims Act amendments, we also enacted three other related statutes: the Program Fraud Civil Remedies Act of 1986, the Anti–Kickback Enforcement Act of 1986 and a provision of the Division of the Department of Defense Authorization Act of 1986. In each of the statutes, we expressly provided that each would apply to conduct occurring after the new laws went into effect. Our decision to remain silent in the False Claims Act amendments, therefore, represents a conscious decision to apply them to false claims predating the amendments.

133 Cong.Rec. H9515 (November 3, 1987); *LaValley*, 707 F.Supp. at 1359–60; *see also Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir. 1986) (While "congressional hindsight is no substitute for legislative analysis generated during the period immediately preceding the enactment of a bill, we do find the language of the recent conference report to have some force due the aura of uncertainty that has surrounded this particular portion of the [statutory] scheme."); *but see United States v. Hill*, 676 F.Supp. 1158, 1167 n. 12 (N.D.Fla.1987) (declining to infer congressional intent through silence); *United States v. Ettrick Wood Products*, 683 F.Supp. 1262, 1265 n. 2 (W.D.Wis.1988) (remarks of one member of Congress subsequent to an act's passage is unpersuasive to determine legislative intent).

Whatever light the comments of the Congressmen may cast on Congress' intent, this Court must look at other factors to determine how the amendments are to be applied.

2. *Purposes of the 1986 Amendments*

At least one court has considered the basic purposes of the 1986 amendments which might suggest congressional intent to apply the enactment prospectively only. *Hill*, 676 F.Supp. at 1167. It is reasonable to assume that Congress did not intend for the amendments to apply retroactively if the purposes of the amendments would be furthered only by prospective application. *Id.* at 1167.

■ The amendments sought to loosen restrictive judicial interpretation of the Act's liability standard and the burden of proof by defining previously undefined terms, by expanding the *qui tam* jurisdictional provisions, and by increasing civil penalties. *See* 132 Cong.Rec. H6479–82 (daily ed. Sept. 9, 1986) (statements of Reps. Glickman, Fish, and Rodino).

Under the language of the former and present False Claims Act, the government need only prove that the defendant knowingly submitted a false claim. Congress objected to judicial interpretation of "knowingly presents or causes to be presented ... a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(1), amended and codified at 31 U.S.C. § 3729(a)(1), which, in some cases, required the government to prove that the defendant had actual knowledge of the fraud and specific intent to submit a false claim. 132 Cong. Rec. H6480 (daily ed. Sept. 9, 1986) (statement of Rep. Fish). *See, e.g., United States v. Davis*, 809 F.2d 1509, 1512 (11th Cir.1987) (requiring specific intent to deceive government); *United States v. Aerodex, Inc.*, 469 F.2d 1003, 1006–07 (5th Cir. 1972) (intent to defraud); *United States v. Mead*, 426 F.2d 118 (9th Cir.1970) (intent to defraud); *but see United States v. Hughes*, 585 F.2d 284, 287 (7th Cir.1978) (government need not prove "intent" to defraud). As a result, Congress defined the terms "knowing" and "knowingly" in the 1986 amendments to articulate the standard of liability and further the Act's remedial purposes. 31 U.S.C. § 3729(b); 132 Cong.Rec. H6480 (Sept. 9, 1986) (statement of Rep. Fish); 132 Cong.Rec. S11243–44 (Aug. 11, 1986) (statement of Sen. Grassley); *see, e.g., Hill*, 676 F.Supp. at 1168. Thus, application of the amendments both prospectively and retroactively would further the remedial purpose of a uniform standard. *Hill*, 676 F.Supp. at 1168. Provident erroneously contends that Congress established a more relaxed standard of scienter under

the 1986 amendments, however, the standard of liability did not change. Congress merely defined and clarified the standard to show that specific intent is inappropriate in a civil statute. *See* 132 Cong.Rec. H6480 (Sept. 9, 1986) (statement of Rep. Fish); *see also United States v. Oakwood Downriver Medical Center*, 687 F.Supp. 302, 305–06 (E.D.Mich.1988) (the amendment did not create a new substantive liability, it merely defined the term "knowingly").

The heightened civil penalties in the amendments attempt to deter and punish the increasingly pervasive problem of fraudulent conduct and to enhance the government's ability to recover losses sustained by seeking "actual replacement costs in every instance." 31 U.S.C. § 3729(a); 132 Cong.Rec. H6480 (Sept. 9, 1986) (statement of Rep. Fish); *United States v. Ettrick Wood Products, Inc.*, 683 F.Supp. 1262 (W.D.Wis.1988); *see also* 132 Cong.Rec. at H6479 (Sept. 9, 1986) (statement of Rep. Glickman) (inflation, increased costs of investigation, and the current value of the dollar support increased damages). While it is possible that general deterrence (i.e., deterrence of others through the application of a law to an individual) may be furthered by either retroactive or prospective effect, *Hill*, 676 F.Supp. at 1167, the purpose of recovering substantial public funds lost as a result of fraud against the government will be furthered by retroactivity. *Ettrick Wood*, 683 F.Supp. at 1266.

Congress was concerned that the old *qui tam* provisions discouraged potential plaintiffs from coming forward with their information of fraudulent conduct. The amended *qui tam* provisions, 31 U.S.C. § 3730(b), were intended to enhance, encourage and expand private citizen involvement in the curtailment of fraudulent claims against the government as well as to ensure government action on the information provided. 132 Cong.Rec. S11243 (Aug. 11, 1986) (statement of Sen. Grassley); 132 Cong.Rec. H6482 (Sept. 9, 1986) (statement of Rep. Glickman). As a result of the new amendments, it is possible that a *qui tam* plaintiff will come forward to report fraudulent conduct which occurred prior to the enactment of the amendments. *Hill*, 676 F.Supp. at 1167. Thus, the purpose of enhancing private plaintiff suits would be furthered by retroactive application of the 1986 *qui tam* provisions. *Id.* at 1167–68.

### 3. Manifest Injustice

According to *Bradley*, the presumption of retroactivity is overcome if it would result in "manifest injustice," *Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016, a determination made under its three prong test. No one factor is dispositive, *see City of Great Falls v. United States Department of Labor*, 673 F.2d 1065, 1068 (9th Cir.1982) (per curiam), but they serve to balance private and public interests and to resolve the issue of whether the "disappointment of private expectations caused by retroactive application will outweigh the public interest in enforcement of the new rule." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1084 (1st Cir.1986); *Hill*, 676 F.Supp. at 1168.

### a. Nature of the Parties

The first factor identified in *Bradley*, the nature of the parties, concerns the distinction between private disputes between individuals and those "involving great national concerns." *Bradley*, 416 U.S. at 718–19, 94 S.Ct. at 2019–20. The *Bradley* court reasoned that "in mere private cases between individuals," a court will and ought to "struggle hard against a construction which will, by a retrospective operation, affect the rights of parties," but in "great national concerns ... the court must decide according to existing laws." 416 U.S. at 717, 719, 94 S.Ct. at 2019, 2020 (quoting *United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801)). *See also United States v. Marengo County Commission*, 731 F.2d 1546, 1554 (11th Cir.1984) ("Although it may not be imperative to apply new congressional enactments to preexisting disputes over private issues, when the new statute manifests important public policy, courts must respect that policy and apply it.").

The amendments to the False Claims Act indicate that Congress sought to deter an

increasingly pervasive and severe problem of great national concern. Legislative history shows congressional concern over billions of dollars in public funds lost through government fraud and the effort to "seek out appropriate legislative mechanisms to insure that the taxpayer's money is well spent and protected from fraud and waste." 132 Cong.Rec. H6481–82 (Sept. 9, 1986) (statements of Reps. Brown and Rodino); *see also Hill,* 676 F.Supp. at 1169 (quoting S.Rep. No. 99–345, 99th Cong., 2d Sess. 3, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5268) (government fraud "erodes public confidence in the government's ability to efficiently and effectively manage its programs").

The present action is not a dispute between private individuals but involves a national effort to prevent and remedy fraud against the government. Thus the first prong of the *Bradley* test militates in favor of retroactive application of the amendments.

### b. Nature of the Rights

The second *Bradley* factor, the nature of the rights affected by retroactive application, is intended to protect rights that have "matured or become unconditional." 416 U.S. at 720, 94 S.Ct. at 2020. The defendant in this case did not have a "matured" right in a particular standard of liability (i.e., "specific intent to defraud"). The amendment merely clarifies "knowingly" and does not effect a substantive change in the law. *See Oakwood,* 687 F.Supp. at 307 (there is no "matured" right to a standard of actual knowledge under the False Claims Act); *cf. Ettrick Wood,* 683 F.Supp. at 1266 n. 3 (does not consider whether retroactive application of the new definition "knowingly" furthers a remedial purpose since the amendments does not cause a substantive change in the law).

The defendants have no "matured" or "vested" right to the imposition of double damages as opposed to triple damages. *Oakwood,* 687 F.Supp. at 307; *Ettrick Wood,* 683 F.Supp. at 1266; *Hill,* 676 F.Supp. at 1169. *See O'Hare v. General Marine Transport Corp.,* 740 F.2d 160 (2nd Cir.1984) (since conduct was previously subject to liability, manifest injustice does not result by retroactively applying new amendments which changed remedial provisions imposing attorney's fees and double interest payments); *Union City,* 697 F.Supp. at 171 (defendants received adequate notice that their liability would be considerable under the former False Claims Act); *United States v. Youngstown Steel Corp.,* No. 82–2406 (LEXIS No. 4564) (W.D.Pa. March 22, 1989) (1989 WL 106514) (1986 amendments to the False Claims Act merely alter the measure of damages that result from violations of preexisting duties which were unaffected by the amendments).

Provident relies on *Boisvert v. F.M.C. Corp.,* No. C–86–20613–WAI (LEXIS No. 13549) (N.D.Cal. Sept. 8, 1987), which held that the *qui tam* amendments to the 1986 False Claims Act should not be retroactively applied since the defendant had a vested right to present a defense of knowledge on the part of the government. *Boisvert* is distinguishable from the action before this court. The *qui tam* provisions in the new amendments have not changed defendant's liabilities and substantive defenses nor do they affect the relationship between the plaintiff-relator and the defendant. On the contrary, the new provisions involve the relationship between "two possible plaintiffs, the United States and the [r]elator who seeks to act for it." *LaValley,* 707 F.Supp. at 1362. Furthermore, the *qui tam* amendments were necessary to correct restrictive judicial interpretations causing jurisdictional bars precluding *qui tam* suits based on information in the government's possession, despite the source. S.Rep. 99–345, 99th Cong., at 12, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5266, 5277. Thus, the *qui tam* amendments are remedial in nature and should be given retroactive effect.

### c. New and Unanticipated Obligations

The third *Bradley* factor, the nature of the impact of the new law on existing rights, arises from the "possibility that new and unanticipated obligations may be

imposed upon a party without notice or an opportunity to be heard." 416 U.S. at 720, 94 S.Ct. at 2020. If the new statutory obligation would have caused the defendant to alter its conduct, a court is likely to find that manifest injustice may result from retroactive application of the statute. *Id.* at 721, 94 S.Ct. at 2021. Provident argues that it can no longer rely on the scienter requirement of "specific intent to defraud" under the former provision. However, the new amendment's explanation of the requisite mental state does not change the underlying requirements for liability. *Ettrick Wood,* 683 F.Supp. at 1267; *see also Hill,* 676 F.Supp. at 1170 n. 18 ("Eleventh Circuit requires the Government to prove specific intent to defraud ... but the case upon which the court relied appears to state that element is an alternative to demonstrating knowledge, i.e., "knowingly....") (citations omitted).

Defendant also asserts that the addition of section 3729(a)(7) to the Act establishes a new cause of action and therefore changes their substantive rights if applied retroactively. That section added: "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government...." 31 U.S.C. § 3729(a)(7). This provision merely strengthens and clarifies other provisions in the Act. For example, 31 U.S.C. § 3729(a)(2) provides: "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government ...," and 31 U.S.C. § 3729(a)(4) provides: "has possession, custody, or control of property or money used, or to be used, by the Government and, intending to defraud the Government or willfully to conceal the property, delivers, or causes to be delivered, less property that the amount for which the person receives a certificate or receipt...."

Congress was concerned that the concept of a "claim" was misconstrued. It wanted to hold liable anyone who makes a material fraudulent misrepresentation to avoid paying money owed as if he submitted an actual false claim. The concept of "claim"

covers those circumstances in which the government suffers a real financial loss. 132 Cong.Rec. H6480 (Sept. 9, 1986) (statement of Rep. Fish). In enacting the new provisions, Congress wanted to prevent individuals from engaging in willful blindness or ostrich-type behavior. 132 Cong. Rec. S11243 (Aug. 11, 1986) (statement of Sen. Grassley); 132 Cong.Rec. H6482 (Sept. 9, 1986) (statement of Rep. Berman); *see also Ettrick Wood,* 683 F.Supp. at 1267.

Defendant does not argue that it would have altered its conduct had it known of any change or clarification in the amendments. "[W]ithout a plausible suggestion of likely significant and justified reliance on the prior law, a party cannot avail itself of the third *Bradley* factor." *Hill,* 676 F.Supp. at 1170 (strains credulity to believe that if the defendants had known of the amendments they would not have submitted false statements). Thus, it cannot be said that this new provision creates unanticipated obligations. There was always the obligation not to defraud the government, the 1986 amendments merely expand and clarify the means for enforcement of that obligation. *See Oakwood,* 687 F.Supp. at 306. Furthermore, the increase in the amount of the civil penalty under the 1986 amendments does not impose any additional duty on the defendant, nor does it alter liability. The provision merely increases the penalty for fraudulent conduct.

Finally, defendant relies on the decision in *Griffon v. United States Department of Health and Human Services,* 802 F.2d 146 (5th Cir.1986) for the proposition that a change in scienter requirement for liability under a statute is substantive and cannot be applied retroactively. *Griffon* is distinguishable from the facts of this case. At this juncture, this Court adopts the analysis of *Griffon* as discussed in *Hill* and notes that the same arguments made by defendant in this case were raised and rejected by the *Hill* court.

The 1986 amendments to the Act did not create such a substantial change in the standard of liability to justify a conclusion that the defendant would have altered his conduct had he known of the amendments.

*Hill,* 676 F.Supp. at 1171. Based on the above, this Court finds that the retroactive application of the 1986 amendments will not result in manifest injustice. To the extent that Provident contends that it relied on the former provisions of the Act, such reliance is not plausible and is outweighed by the great national concern of halting fraud on the government. The public's interest in enforcement of the 1986 amendments dwarfs any private expectations.

## VI. APPLICATION OF SUBJECT MATTER JURISDICTION TO THIS CASE

 Having determined that the 1986 amendments are properly applied to this case, this court must ask if the plaintiff has demonstrated a sufficient basis for subject matter jurisdiction: whether (1) there has been a public disclosure within the meaning of the statute; (2) if so, whether the relator "based" his suit on the public disclosure; and (3) if so, whether the relator is an "original source of the information."

### A. *Public Disclosure*

Provident argues that this court lacks subject matter jurisdiction because Stinson does not qualify as a proper *qui tam* plaintiff under the express terms and intent of the False Claims Act. Subsection 3730(e)(4)(A) provides:

(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

Provident maintains that this action is barred because Stinson's claims derive from public disclosures of allegations and transactions in a prior unrelated state civil lawsuit, *Provident Life & Accident Insurance Co. v. Leonard,* No. 85–10113 CA(15) (Fla. Dade Co.Cir.Ct. March 1985) *rev'd,* 526 So.2d 721 (Fla.Dist.Ct.App.1988) (the

"*Leonard*" litigation). Stinson argues that a public disclosure does not include allegations or transactions in civil "litigation" or "proceedings" pursuant to section 3730(e)(4)(A) of the Act. Stinson contends that according to the express language of the statute, a *qui tam* claim may not be based on information disclosed at a civil "hearing." The provision does not mention civil litigation, proceeding or discovery. Stinson argues that Congress intended to encourage an expanded role for the *qui tam* plaintiff and drew a specific line as to the source of information considered to be "public disclosures."

Provident argues, however, for an expansive reading of "public disclosure" to include civil "litigation" or "proceedings" since Congress' intended to eliminate the type of parasitic lawsuit prevalent in the 1930's.

To date, only two courts have addressed the meaning of "hearing" since the passage of the 1986 Amendments. In *United States ex rel. Houck v. Folding Carton Administration,* No. 87–C–1253, slip op. (N.D.Ill. Jan. 20, 1988) (1988 WESTLAW 74829) the court stated that the Act "does not permit *qui tam* plaintiffs to bring actions based solely upon transactions publicly disclosed in, among other forums, civil proceedings and hearings." *Id.* at 4. Stinson argues that the court's inclusion of the word "proceeding" adds language to an otherwise unambiguous provision of the Act.

In *LaValley,* 707 F.Supp. 1351, the *qui tam* plaintiff argued that a court proceeding is less likely to lead to a parasitical action since the evidentiary basis for the allegations is not disclosed. Thus the word "proceeding" was purposely omitted from the statute. But the court, citing to *Houck,* stated that they assumed "without deciding, however that 'proceeding' means the same as a 'hearing,' and thus, a public disclosure has occurred." *Id.* at 1366.

It seems that Congress was very specific in choosing the appropriate wording of the statute given the problematic history of *qui tam* jurisdiction issues. Additionally, in the preceding paragraph, section

3730(e)(3), Congress specifically limited the role of the *qui tam* plaintiff by *including* the words "civil suit" and "proceeding." Since, however, Stinson argues that its information falls within the original source exception to the Act, we need not resolve this issue.

### B. *"Based on" the Leonard Litigation and Source of Information*

Assuming for the purposes of this motion that the prior *Leonard* litigation is a public disclosure, the Stinson firm argues that much of their information upon which this action is based was known before the *Leonard* suit. Stinson cites to a letter written by the firm to the Honorable Claude Pepper on December 5, 1984, three months before the *Leonard* suit was filed. Plaintiff's Exhibit A. In that letter, Stinson describes Provident's handling of Mr. Leonard's insurance claims as well as the claims of other of Mr. Leonard's employees. Stinson mentions in the letter that "it appears that the insurance companies are apparently collecting excessive premiums and limiting their exposure by relying on Medicare...." *Id.* In March of 1985, Provident filed a Declaratory Relief action naming Mr. Leonard as the defendant. Provident disputes that the letter suggests anything about alleged false claims to defraud the government.

Nevertheless, it appears that as of the date of the letter, Stinson reviewed Provident's policy and various claims filed by the Leonard Company and were aware of the possibility of fraudulent conduct.

### C. *Original Source*

Provident contends that Stinson is not an original source of information upon which this action is based since Stinson did not have direct and independent knowledge of Provident's alleged fraudulent practices. Section 3730(e)(4)(B) provides:

> For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before

filing an action under this section which is based on the information.

Stinson argues that even though some of the information which forms the basis of this suit was obtained during the course of discovery in the *Leonard* litigation, it was derived in an independent and direct manner, qualifying for the "original source" exception to the statute.

Stinson corresponded with Robert A. Streimer, Acting Director of the Health Care Financing Administration's Bureau of Eligibility, Reimbursement and Coverage by a letter dated December 26, 1985. Plaintiff's Exhibit B. Mr. Streimer was asked to render an opinion concerning Mr. Leonard's policy. Mr. Streimer opined that Medicare is a secondary payer not only to Mr. Leonard's policy but to the policies of those directors of the company also enrolled in the plan.

Although this letter was written subsequent to the filing of the *Leonard* complaint, the information was derived independently and directly by the Stinson firm.

Further, Stinson conducted a search after the commencement of the *Leonard* litigation for other complaints filed with the Indiana Insurance Department. During this search, the complaint of Anna Mae Hillenbrand was obtained. *See* Plaintiff's Surreply Exhibit B through E. In May 1986, Provident requested an affidavit from Ms. Hillenbrand describing the manner in which her insurance claims were handled by Provident. In the affidavit, Ms. Hillenbrand described how Provident paid as secondary payer to Medicare instead of primary. Stinson maintains that their knowledge of Ms. Hillenbrand's complaints were known prior to Provident's disclosures of their method of handling claims in the *Leonard* litigation.

In *Houck*, the court stated that "[t]he original source exception was intended to insure that *qui tam* actions based *solely* on public disclosures could not be brought by individuals who had no direct or independent knowledge of the information or those who were not an original source to the entity that disclosed the allegations." *Houck*, at 4 (citing 132 Cong.Rec. S11233

(daily ed. August 11, 1986) (emphasis added). Further, the *Houck* court stated, "[a] person is an 'original source' if he had some of the information related to the claim which he made available to the government ... in advance of the false claims being publicly disclosed." *Houck*, at 4.

The information obtained by the Stinson firm can be characterized as "direct." Stinson does not seem to be a disinterested outsider and did not "simply stumble across an interesting court file." *See Houck*, at 4–5. Stinson's knowledge of the pertinent information contained in the Streimer letter and Hillenbrand affidavit was obtained by virtue of its direct relationship to, and interest in, the *Leonard* litigation. *Id.*

The Stinson information can also be characterized as flowing from a source "independent" of the *Leonard* litigation. *Cf. Houck*, at 5 (plaintiff's knowledge was not "independent" since there was nothing to indicate that if claims were not publicly disclosed, plaintiff would have learned of them). The information from Ms. Hillenbrand, and the letters from the Honorable Claude Pepper and Mr. Streimer indicate that even if there was no "public disclosure" through the *Leonard* litigation, Stinson would still have learned of the information of which the present claim is based through its relationship with Leonard.

Provident finally argues that Stinson also based its allegations on information contained in public governmental reports including the Government Accounting Office (GAO) Report of January, 1987, and 1988 as well as the Department of Health and Human Services Report of October 20, 1987. Neither Provident's name, nor its alleged fraudulent conduct is disclosed in the reports. If this argument were to stand, then the entire *qui tam* jurisdictional provision would be emasculated. Publication of general, non-specific information does not necessarily lead to the discovery of specific individual fraud which is the target of the *qui tam* provisions.

Accordingly, this Court finds that Stinson qualifies as an original source of information. This action is not, therefore, barred by the jurisdictional requirements of the False Claims Act, 31 U.S.C. § 3730(e)(4)(A), (B).

## VI. FAILURE TO STATE A CLAIM

### A. *Failure to Plead Fraud*

Provident argues that Stinson's complaint fails to state a claim upon which relief may be granted and fails to allege fraud with particularity.

■ Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). A mere conclusory allegation which asserts fraud without a description of the fraudulent conduct does not satisfy Rule 9(b). *Lincoln Nat'l Bank v. Lampe*, 414 F.Supp. 1270, 1278–79 (N.D.Ill.1976). The description of the circumstances constituting fraud must include the "time, place, and particular contents of the false representations, as well as the identity of the party making the misrepresentation, and what was obtained or given up thereby." *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982); *D & G Enterprises v. Continental Illinois Nat'l Bank*, 574 F.Supp. 263, 267 (N.D.Ill.1983).

Stinson's complaint sufficiently alleges fraud with the requisite particularity by alleging the circumstances, conduct, identity of the parties involved, and the result. *See, e.g.*, Amended Complaint at pp. 18–26.

### B. *Failure to State a Claim*

Stinson alleges that Provident has violated section 3729(a)(1), (2), (3), (4) & (7) by actions of its employees in withholding primary coverage which was intentionally, deliberately, and specifically designed to cause to be made a false record to get a claim paid by Medicare which was false in its designation of Medicare as the primary source of payment. *See* Amended Complaint at p. 21.

The elements of a claim under section 3729(a)(1) are: (1) that the defendant presented or caused to be presented to an

agent of the United States a claim for payment; (2) that the claim was false or fraudulent; (3) that the defendant knew the claim was false or fraudulent; and (4) that the United States suffered damages as a result of the false or fraudulent claim. 31 U.S.C. § 3729(a)(1); *Blusal Meats, Inc. v. United States,* 638 F.Supp. 824, 827 (S.D. N.Y.1986). Section 3729(a)(2) requires that: (1) the defendant made, used, or caused to be made or used, a record or statement to get a claim against the United States paid or approved; (2) the record or statement and the claim were false or fraudulent; (3) the defendant knew that the record or statement and the claim were false or fraudulent; and (4) the United States suffered damages as a result. 31 U.S.C. § 3729(a)(2); *Blusal Meats,* 638 F.Supp. at 827. Section 3729(a)(4) requires that: (1) the defendant had possession, custody, or control of money or property used or to be used by the government; (2) the defendant delivered or caused to be delivered less property than the amount for which he received a certificate or receipt; (3) with intent to defraud or to willfully concealed the property; and (4) the United States suffered damages as a result. 31 U.S.C. § 3729(a)(4). Finally, section 3729(a)(7) requires that: (1) the defendant made, used, or caused to be made or used a record or statement to conceal, avoid, or decrease an obligation to the United States; (2) the statement or record was false; (3) the defendant knew that the statements or record was false; and (4) the United States suffered damages as a result. 31 U.S.C. § 3729(a)(7). The plaintiff's allegations are sufficient to state claims under section 3729(a)(1), (2), (4) & (7).

 Stinson also alleges that Provident conspired to defraud the government by getting a false or fraudulent claim paid or allowed. The elements of such a claim are: (1) that the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim. 31 U.S.C.

§ 3729(a)(3); *Blusal Meats,* 638 F.Supp. at 828.

The essence of a conspiracy under the Act is an agreement between two or more persons to commit a fraud. *Blusal,* 638 F.Supp. at 828 (citing *United States v. Martino,* 664 F.2d 860, 876 (2d Cir.1981)). Stinson's complaint is void of any allegations of an agreement and thus fails to state a claim under section 3729(a)(3).

For the reasons stated, the defendant's motion to dismiss for lack of subject matter jurisdiction is *DENIED;* the defendant's motion to dismiss for failure to plead fraud with particularity is *DENIED;* the defendant's motion to dismiss for failure to state a claim for relief is *DENIED* except that as the complaint purports to state a claim for conspiracy under section 3729(a)(3) the motion is *GRANTED.*

DONE AND ORDERED.